| 102 | 346 |
|-----|-----|
| 105 | 692 |
| 102 | 346 |
| 128 | 701 |
| 102 | 346 |
| 142 | ³353 |
| 102 | 346 |
| j151 | 392 |
| e151 | 412 |

JUDSON A. PECK ET AL. v. THE BOARD OF SUPERVISORS OF THE COUNTY OF BERRIEN.

*Board of supervisors—Appointed member—Powers— Removal of county seat—Election—Ballots.*

1. A township temporarily represented by an appointed supervisor has the same voice upon the board of supervisors that it had while represented by the supervisor elected to such office.

2. An appointment of a supervisor for the remainder of the term of his predecessor is a valid temporary appointment, though it may not prevent an election.

3. It was intended by the use of the word "elect," in How. Stat. § 489, which provides that, "whenever a county seat is proposed to be removed, the board of supervisors for such county shall have power, by a vote of two-thirds of all the members *elect*, to designate a place to which such proposed removal is to be made," to require the consent of two-thirds of a full board to such designation, and not to deprive townships, which should be represented by appointed supervisors, of a voice in the proceedings.

4. After a resolution designating a place for the removal of a county seat had been offered, an amendment was offered making such designation to depend upon the city so designated providing a perfect title to a good and sufficient site for the buildings, and depositing with the county treasurer a designated sum to be used in the erection of such buildings. The committee to whom the amendment was referred reported that the resolution as amended would be legal, but did not recommend the adoption of the amendment. The report was accepted and adopted. No vote was taken upon the amendment, but the original resolution was adopted. And it is held that the amendment was not a part of the original resolution as adopted, and that its omission from the notice of election is not a valid objection to the validity of the proceedings.

5. Resolutions of a board of supervisors relating to the method of submitting to the electors the question of the removal of the county seat, from their nature, must be acted upon before the question is submitted, and do not affect the question to be voted upon.

6. It is not a valid objection to the validity of proceedings for the removal of a county seat that the county board of election commissioners prepared the ballots, that they were on a separate piece of paper from the township tickets, and were deposited in a separate ballot-box.

Error to Berrien. (Coolidge, J.) Argued October 30, 1894. Decided November 2, 1894.

*Certiorari* to review proceedings for the removal of the county seat of Berrien county from Berrien Springs to St. Joseph. Defendant brings error. Reversed, and judgment

entered in this Court for defendant. The facts are stated in the opinion.

*N. A. Hamilton, George S. Clapp,* and *Lawrence C. Fyfe,* for appellant.

*Edward Bacon, Spafford Tryon,* and *Marshall Howell,* for petitioners.

HOOKER, J. The electors of Berrien county voted upon the proposition to remove the county seat from Berrien Springs to the city of St. Joseph, which vote was canvassed by the board of supervisors of said county, and the proposition declared carried. Upon *certiorari* to the board of supervisors, the proceedings were held to be void by the circuit court of Berrien county. The cause is here upon writ of error.

The proceedings are attacked:

1. Upon the alleged invalidity of the action of the board in submitting the proposition.

2. Upon alleged irregularities in the preparation and casting of the ballots and the counting of votes.

3. Upon questions relating to the canvass of the returns by the board of supervisors.

The resolution to submit the proposition received the votes of 18 out of 26 supervisors. Two of the 18 had not been elected, but were appointed to fill vacancies. It is contended that the votes of the two supervisors mentioned were unlawfully counted in favor of the proposition, inasmuch as they were not elected. How. Stat. § 489, is cited as authority for this contention. It is as follows:

"Whenever a county seat is proposed to be removed, the board of supervisors for such county shall have power, by a vote of two-thirds of all the members elect, to designate a place to which such proposed removal is to be made, and after a majority of the electors of such county voting thereon shall have voted in favor of the proposed location, as hereinafter provided, to make and establish such county seat."

Section 37, art. 4, of the Constitution, provides that—

"The Legislature may declare the cases in which any office shall be deemed vacant, and also the manner of filling the vacancy, where no provision is made for that purpose in this Constitution."

How. Stat. § 729, provides for such appointment. We find no authority for the proposition that a township temporarily represented by an appointed supervisor has not the same voice upon the board that it had before the vacancy. The Constitution (article 4, § 37, cited above) contains no implication of the kind, and the statute referred to expressly provides that the appointee shall continue to discharge the duties of the office, etc. That the use of the term "elect," in section 489, has a purpose, is plain; but we think it more reasonable to believe that it was intended to require the consent of two-thirds of a full board, than that it was designed to deprive townships, which should be represented by appointive officers, of a voice in the proceedings. It was intended to preclude action by two-thirds of a quorum, or of a board whose numbers had been lessened by vacancies.

It is claimed that the appointments of the two supervisors were void because made for the remainder of the term, instead of until successors should be elected. We are not referred to the appointments of these officers, but we think such appointments as these are claimed to be would be valid temporary appointments, though they might not prevent an election.

The next question of importance refers to the proposition submitted. The board of supervisors being in session on January 5, 1894, the following resolution was offered:

"*Resolved,* that it is the sense of this board that the county seat of this county should be removed from its present location to the city of St. Joseph, and that this board does hereby designate the city of St. Joseph as the proper place to which the said county seat should be removed; and that

the question of the removal of said county seat to St. Joseph shall be, and is hereby, submitted to the electors of the said county of Berrien at the time of holding the next annual township election."

The following amendment was thereupon offered:

"That the city of St. Joseph provide a perfect title to a good and sufficient site for the buildings, and that they deposit $10,000 with the county treasurer, to be used in the erection of said buildings, on or before the 20th day of March, 1894."

A motion was made to " refer the amendment," which motion prevailed. The following is the report of the judiciary committee:

" To the Board of Supervisors of Berrien County :
" Gentlemen: Your committee on judiciary, to whom was referred the resolution of Supervisor Comings, of St. Joseph, for the removal of the county seat to St. Joseph, as amended by Supervisor Smith, of Galien, have had the same under consideration, and your committee would report that they have examined the statutes and the decisions of the Supreme Court upon this point, and that they are of the opinion that the submission to the people of the resolution, as amended, would be legal.
" Respectfully submitted,
" GEORGE W. ROUGH,
" W. H. BALL,
" A. J. EASTON,
" Committee."

The record proceeds:

" Mr. Tichenor moved that the report be accepted and adopted, which prevailed.    *    *    *    The question now being on the resolution offered by Mr. Comings, Mr. Comings demanded the ayes and nays. The ayes and nays being had, the resolution prevailed by the following two-thirds vote."

Upon January 6 the following resolution was adopted:

" Whereas, a resolution has been adopted by this board by a two-thirds vote thereof, proposing the removal of the county seat of this county, and designating the city of St.

Joseph as the place to which such removal is to be made: Therefore,—

" *Resolved,* that the proposition to remove said county seat to the said city be submitted to the electors of said county on the first Monday of April, 1894, which is the time of holding the next annual township meeting; and the county clerk shall prepare, and the sheriff shall cause to be published and posted, such notices of such election as are required by the statutes in such case made and provided;

" *Resolved,* further, that, in cities or wards where an election would not otherwise be held on said day, a special election shall be held on such day for the purpose aforesaid, in the same manner as at charter or ward elections, and the several clerks of the inspectors of election of such cities and wards shall give the like notice of such election as is by law required for special elections; and

" *Resolved,* further, that said county clerk shall prepare and cause to be distributed, for the use of the electors at the several polling places of the county on said day, a sufficient number of ballots, one-half of which shall have printed thereon, 'For the removal of the county seat,' and one-half of which shall have printed thereon, 'Against the removal of the county seat.'"

This action was followed by the following report of a committee:

" *To the Board of Supervisors of Berrien County, Mich.:*
"Messrs: Your committee to whom was delegated the authority to visit the city of St. Joseph, and view the site or several sites presented for the purpose of acceptance by the board of supervisors for county. sites of county buildings, met at the city of St. Joseph on the 18th day of January, 1894, the committee being all present. They then, on said 18th day of January, proceeded to visit and view four sites presented; and your committee beg leave to report that they recommend for your acceptance the following described pieces or parcels of land, to wit: A piece or parcel of land described as follows, to wit: Bounded on the south by Ship street, on the north by Port street, on the east by Wayne street, on the west by Church street; also, a half block bounded north by Front street, on the south by Port street, on the east by Wayne street, and on the west by an alley, being one-half block of

lands, lots numbered 333, 334, 401, 402. All of which is
hereby respectfully submitted.

"Dated at St. Joseph, Mich., January 18, 1894.
                    "J. V. Phillips.
                    "W. Randall.
                    "C. C. Bell.
                    "S. H. Martin."

The record shows that the following proceedings were
then had:

"Mr. Comings moved that the majority report [mean-
ing the report aforesaid, dated January 18, 1894] be
accepted and adopted, which prevailed. Mr. Phillips pre-
sented a bond from the city council of St. Joseph, signed
by the mayor and clerk of said city, and the proceedings
of the council relating thereto. Mr. Peck moved that the
bond and papers relating to the proceedings of the council
be referred to the judiciary committee. Mr. Peck demanded
the ayes and nays. The ayes and nays being had, the
motion was declared lost by the following vote."

The following election notice was published and posted:

"State of Michigan, ⎱ ss.
    County of Berrien  ⎰

"To the Electors of the County of Berrien, State of Michi-
    gan:

"You are hereby notified that at the annual township
election to be held in the several townships and city wards
of said county on Monday, the 2d day of April, A. D.
1894, there will be submitted to the electors of said county
a proposition for the removal of the county seat of said
county from its present location, at the village of Berrien
Springs, to the city of St. Joseph, in said county, in
accordance with the following resolution passed by the
board of supervisors of said county, by a vote of two-
thirds of the supervisors elect, on Friday, January 5,
A. D. 1894:

"'Resolved, That it is the sense of this board that the
county seat of this county should be removed from its
present location to the city of St. Joseph, and that this
board does hereby designate the city of St. Joseph as the
proper place to which such county seat shall be removed;
and that the question of the removal of said county seat

to St. Joseph shall be, and is hereby, submitted to the electors of said county of Berrien at the time of holding the next annual township election.'

"In testimony whereof, I have hereunto set my hand and affixed the seal of the circuit court of said county this 6th day of February, A. D. 1894.

"FRED A. WOODRUFF,

[Seal.]                              "County Clerk."

It is claimed that this notice did not contain the proposition that was submitted by the board, in that the original resolution, *i. e.*, that of January 5, was conditioned upon a site being furnished by the city of St. Joseph, and, again, that the resolution of January 6 was contradicted by the resolution of Mr. Gard in relation to the ballots. It is also contended that the record shows that the place selected for the county seat was a piece of land consisting of certain designated lots in the city of St. Joseph, while the proposition voted upon was to remove the county seat to St. Joseph, or at most to the city of St. Joseph.

We consider these objections as overtechnical. It can hardly be said that the amendment of Mr. Smith was part of the resolution of January 5, as adopted. The amendment was referred to a committee, who reported that the resolution as amended would be legal; but the record does not show that the committee recommended the adoption of the amendment. Their report was accepted and adopted, but no vote appears to have been taken upon the amendment. The original resolution, however, was adopted.

The resolution that the clerk provide distinctive "yes" and "no" ballots, and the subsequent resolution of Mr. Gard,[1] were not designed to be submitted to the voters.

---

[1] Mr. Gard moved that the clerk be instructed to prepare the ballots for the election relating to the removal of the county seat in accordance with Act No. 190, Laws of 1891.

102 MICH.—23.

They related to the method of submission, and, from their nature, had to be acted upon before the submission, and did not affect the question to be voted upon.

As to the third contention, *i. e.*, that the proposition submitted was not sufficiently specific, we think it plain that the board never intended to deprive itself of the power to locate the county buildings. It left to the voters the question of removal to the city of St. Joseph, as clearly appears from the notice. It decided, in advance, to erect the buildings upon a site tendered by that city.

The record shows that the board were concerned about the nature of the ballots to be used. After obtaining the advice of the prosecuting attorney and Attorney General, they adopted a ballot in accordance with the advice received. The following is a copy of the ballot:

### OFFICIAL BALLOT.

INSTRUCTIONS—If you desire to vote in favor of the removal of the county seat to St. Joseph, you will make a cross in the square opposite the word "Yes," which is printed below the words, "For the removal of the county seat to St. Joseph."

If you desire to vote against the removal of the county seat to St. Joseph, you will make a cross in the square opposite the word "No," which is printed below the words, "For the removal of the county seat to St. Joseph."

Before leaving the booth fold the ballot so that the initials may be seen on the outside.

FOR THE REMOVAL OF THE COUNTY SEAT TO ST. JOSEPH.

YES ☐

NO ☐

*Printed by authority.*

These ballots were separate from the ballots used for the election of officers. The objections made to them are:

1. That they were made by the board of election commissioners of the county.

2. That they were upon a separate piece of paper from that upon which the township tickets were printed.

3. That the two ballots were deposited in separate boxes.

It is contended that the county board of election commissioners can only act in cases of general elections, and that the defendant board erred in treating the spring election of 1894 as such. It is said that there can be but one ballot used at any election, and consequently that there can be but one box used. This seems to be based upon section 1 of Act No. 190, Laws of 1891, which section contains no mention of township officers, and Act No. 194, Laws of 1891, which provides for township boards of commissioners. The powers of county boards are not limited to providing ballots for elections where the officers named in section 1 of Act No. 190 are to be voted for. Section 9 of that act makes it their duty to provide ballots for "all proposed constitutional amendments or other questions to be submitted to the electors." Under article 20, § 1, of the Constitution, proposed amendments may be submitted at the spring election, although no officers, other than township officers, are to be voted for. It would seem to follow that there may be occasion for the action of county boards in cases not covered by said section 1. Cases of special elections for judges or county officers are apparently covered by section 1, calling for action by the board of county commissioners. It is apparent that in such cases, and at spring elections where a full State ticket is to be elected, there may be two ballots, or we must say that the township commissioners have no duties to perform. No express prohibition of a separate ballot for township officers appears in either statute, nor is there

any provision for informing the county commissioners of the township tickets, unless it be inferable from section 10. On the other hand, no provision seems to have been made for notice to township commissioners of the pendency of propositions such as the one in question. The law, in our judgment, contemplates that where State or county measures, or State or county officers to be elected by reason of a vacancy, are to be voted upon, the county commissioners may act, and in such case the ballot may be separate from the ballot containing the tickets for township officers, and separate ballot-boxes may be used, for the furnishing of which section 6 of Act No. 190 provides.

Again, it is urged that the ballots should have been separate, *i. e.*, some "for," and some "against," the proposition, as provided by How. Stat. § 491. The case of *Double v. McQueen*, 96 Mich. 39, justifies the counting of ballots prepared under Act No. 190, substantially like those in question.

This disposes of the important questions in the case. A number of questions are raised by the petition in this case, relating to the conduct of electors and inspectors of election, but we think it unnecessary to discuss them further than to say that the return shows that the inspectors caused returns of the canvass of votes in the various precincts to be made and forwarded to the county clerk, and that they were canvassed by the board of supervisors, and the result found by them was duly declared. We fail to find that in the record which would justify us in overturning their decision in the premises. See *Hipp v. Board of Supervisors*, 62 Mich. 456; *Double v. McQueen*, 96 Id. 39; *Pinkerton v. Staninger*, 101 Id. 273.

The judgment of the circuit court will be reversed, and one entered here for the defendant.

The other Justices concurred.