# CHARLESTON

WOOD *v.* GORDON.

| 58   321 |
| d66  497 |

Submitted October 18, 1905.    Decided November 14, 1905.

1. MUNICIPAL CORPORATIONS---*Council---Majority Vote.*
    Whenever the words, "The council for the time being shall by a majority vote of all the members elected," or words of like import, shall occur in the charter of a municipal corporaation, relative to the members of the common council thereof, they shall be construed to mean a majority of the whole number of members to which the common council is entitled under its charter. (p. 323.)

Petition by Warren Wood for writ of *mandamus* against H. C. Gordon, mayor, and others.

*Writ Refused.*

HOLT & DUNCAN, WALLACE & FITZPATRICK, GEO. I. NEAL, and W. K. COWDEN, for petitioner.

LACE MARCUM, GEO. J. MCCOMAS, E. E. WILLIAMS, and C. E. HOGG, for respondents.

MCWHORTER, JUDGE:

The common council of the city of Huntington, in the county of Cabell, is composed, under its city charter, of a mayor and twelve councilmen. At a meeting of said common council held at its council chamber in said city on the 19th day of June, 1905, the mayor presiding and eleven of the twelve members of council were present, when George L. Pickering who was one of the members at the time, tendered his resignation as a member of the council, which resignation was accepted. The council then proceeded to the election of a member to fill the vacancy thus created. When Warren Wood and I. R. Titus, respectively, were placed in nomination and a vote being taken, six of the councilmen voted for Wood and four voted for Titus, and the Mayor declared Wood elected to fill the vacancy of the unexpired term of George L. Pickering resigned, and Wood took and subscribed the oath of office, as a councilmen, and caused a certificate of said oath to be filed with the clerk of said city on the 20th day of June, 1905. On the 3rd day of July, 1905, the circuit court of Cabell county

awarded an alternative writ of *mandamus* against the Mayor, requiring him to change said ruling made by him at the meeting of June 19th, whereby he had declared Wood elected councilman to fill the said vacancy, and to declare that neither the said Wood nor any other person was elected to fill the said vacancy. At a meeting of said council, held on the 3rd day of July, 1905, the mayor changed his ruling in obedience to said alternative writ of *mandamus* and declared that said Wood was not elected to fill the said vacancy in said council and that no one was elected, and that said vacancy still existed. And the clerk of said council who was present for the purpose of recording the proceedings and minutes of the council, refused under the direction of the mayor to enroll said Wood as a member of the council and both the clerk and the mayor refused to recognize the said Wood as a member of the council. A motion was then made by a councilman that the minutes of the meeting of June 19, 1905, as read by the clerk and showing that said Wood was duly declared by the mayor to have been elected a member of the council to fill the said vacancy, be approved, which motion the mayor refused to entertain and likewise refused an appeal therefrom demanded by members of the council, but the motion for appeal being put to a vote by a member of the council, the motion was carried by a vote of six for and five against and the minutes of the meeting of June 19, 1905, as read by the clerk, were approved. On the 17th of July, 1905, the alternative writ awarded against the mayor by the circuit court on the 3rd of July was made peremptory and the court declared that Warren Wood was not elected to fill the said vacancy and that the same still existed. On the 17th day of July, 1905, the council again met in regular session, the mayor presiding, and took up for consideration, the filling of the vacancy in the council declared by the circuit court to exist. When the same persons, Wood and Titus, were nominated for the position, a vote was taken and out of ten members of council present, six voted for Wood and four voted for Titus, when the mayor presiding declared that neither said Wood nor said Titus was elected, and that said vacancy still existed, from which ruling of the chair, an appeal was taken, which, by a vote of six against, to four for, the decision was

not sustained and the said Wood was by the council declared elected a member of the council to fill the said vacancy, and said Wood again took the oath of office and presented himself before the mayor and council and demanded of them recognition as a member of the council; but the mayor refused to recognize said Wood as a member of the council, and the city clerk refused under the direction of the council, or in any way, to recognize him.

Warren Wood filed his petition in this Court, praying for an alternative writ of *mandamus* to be directed to the common council of the city of Huntington, and to the said Mayor and the eleven members of the council and the clerk of said city, naming the mayor, councilmen and clerk, commanding them and each of them, to permit said Wood "to participate in all the meetings and deliberations of said common council and to be accorded the privilege of voting upon all questions arising before said common council upon which other members thereof have the right to vote, and to otherwise recognize your petitioner, as a member of said common council of said city, or show cause if any they, or any of them, can, why they, or any of them should not do so." The only question involved in this case is the construction of section 14 of chapter 150 of the Acts of 1901, said chapter being the charter of the city of Huntington. Said section is as follows: "Wherever a vacancy shall occur from any cause in the office of mayor, councilman, treasurer, city clerk or city assessor, the council for the time being shall by a majority vote of all the members elected, fill the vacancy until the next general election, at which time a successor shall be elected by the qualified voters of said city." The rule is well established that in the construction of statutes, effect must be given as far as possible to every part thereof: evidently the legislature had some object in providing that a vacancy should be filled "by a majority vote of all the members elected." The number of members elected to said council was twelve, of which seven are required for a majority; if a majority of a quorum, or of the the number then constituting the council after one or more had died or resigned, had been intended, the leglature would have so provided by saying that a majority of the council as then constituted, or a majority of a quorum, as might be

intended, should fill the vacancy. *Pollasky* v. *Schnid*, 55 L. R. A. 614, is a case exactly in point, where the supreme court of Michigan holds that "The number of votes necessary to pass an ordinance over a veto under a statute providing that it shall be two-thirds of all the members elected to the council, must be based on the total number elected, although at the time of the vote one member has died and one resigned," and in *Pimental* v. *San Francisco*, 21 Cal. 351, the act provided that no ordinance should be passed, "unless by a majority of all the members elected to each board." The board of assistant alderman was composed of eight members, and one of the eight had resigned and four of the seven remaining had voted for the ordinance, and the court held that "The ordinance in question, therefore, not having received the vote of a majority of all the members elected, was never passed. It was in fact rejected—as much so as if every member had cast his vote against its passage. It was, therefore, for all purposes an absolute nullity." See a so *McCracken* v. *San Francisco*, 16 Cal. 591; *San Francisco* v. *Hagen*, 5 Cal. 169. It is contended by counsel for petitioner that these cases do not apply in case at bar because they have reference to the passage of ordinances. I fail to see the force of this contention. The legislature in providing for a vote of the council on a proposition before it and when it provides the number of votes to sustain or carry such proposition by the act of the council, it matters not what is intended to be done, the number of votes designated must be given or the motion fails. But it is further contended that there is no West Virginia, or Virginia case to the same effect as the cases cited. The question was never before this Court, except in the case of *Osborne* v. *Staley*, 5 W. Va. 85, and that was a case in which the passage of an act was called in question because the senate having twenty-two members when full, but having one vacancy had but twenty-one members and the act had been declared passed by the senate, by but eleven votes, that being a majority of twenty-one. The act was sustained by the court on the principle that an act of the legislature must be held to be constitutional if there can be any doubt in its favor and the court in some manner worked up a doubt of which it gave the act the benefit and saved it, while it says "For

these reasons, with all respect, it was the duty of the senate to have declared the bill not passed." The Constitutional Convention which assembled in 1872, seeing the dilemma in which the Supreme Court was placed in order to save the act of the legislature, which had so clearly conflicted with the Constitution, by section 32 of Art. VI of the Constitution, then adopted by it, provided against any similar action in the future.

The writ of *mandamus* is refused.

*Writ Refused.*