## N. C. McLean

*v.*

## The City of East St. Louis.

*Opinion filed October 17, 1906.*

1. Municipal corporations—*concurrence of majority of council is essential to passage of ordinances.* Section 13 of article 3 of the City and Village act requires that the yeas and nays shall be taken upon the passage of all ordinances, and the concurrence of a majority of the whole body, and not simply a majority of a quorum, is necessary to their passage; and this rule applies to an ordinance for a local improvement.

2. Same—*vacancy in council does not decrease number of votes required for a majority.* Under section 13 of article 3 of the City and Village act, requiring the concurrence of a majority of·all the members elected in a city council for the passage of an ordinance, a vacancy in the council does not decrease the number of votes required for a majority.

3. Same—*the mayor is not entitled to vote except in case of tie.* The mayor cannot be counted to make a quorum, nor is he entitled to vote except in case of a tie; and the fact that he approves an ordinance receiving seven affirmative votes and five negative votes in a council of fourteen aldermen, there being one vacancy, does not render the ordinance valid.

Appeal from the City Court of East St. Louis; the Hon. J. E. Dunnegan, Judge, presiding.

C. E. Pope, (Forman & Whitnel, Dan McGlynn, E. R. Davis, Charles B. Carroll, H. L. Browning, N. C. Lyrla, L. H. Hite, M. D. Baker, and J. J. Rafter, of counsel,) for appellant:

The concurrence of a majority of all the members elected to the city council is necessary to the passage of a city ordinance. The bill for ordinance No. 1305, which received the votes of seven aldermen of the city council of the city of East St. Louis, composed of fourteen aldermen and a mayor, did not receive the requisite number of votes to pass the same, but the ordinance was, in fact, defeated. McQuillin on Mun. Ordinances, secs. 105, 106; Starr & Cur. Stat.

chap. 24, art. 3, sec. 13; *Carrollton* v. *Clark,* 21 Ill. App. 74; *People* v. *Maxton,* 38 id. 152; 139 Ill. 306; *Belknap* v. *Miller,* 52 Ill. App. 617; *Schofield* v. *Hudson,* 56 id. 191; *Evanston* v. *O'Leary,* 70 id. 124.

The first portion of section 13 of article 3 of the City and Village act is not mandatory. That portion directs that the yeas and nays shall be taken on the passage of all ordinances, etc. But the latter portion, which requires the concurrence of a majority of all the members elected in the city council shall be necessary to the passage of any ordinance, is mandatory. *Barr* v. *Auburn,* 89 Ill. 361; Horr & Bemis on Mun. Police Ordinances, chap. 5, sec. 35, chap. 3, sec. 17.

Where there is a vacancy in the city council a majority of the remaining members is not sufficient to pass an ordinance. A vacancy does not change the law in this respect, and a majority of all the members originally elected to the city council must concur before the ordinance is passed. *Pollasky* v. *Schmid,* 128 Mich. 699.

Freels & Joyce, and M. Millard, for appellee:

The resignation of an alderman and his acceptance of the office of city treasurer creates a vacancy in the city council. *Eddy* v. *County Comrs.* 15 Ill. 375; *People* v. *Hanifan,* 96 id. 433; *Packingham* v. *Harper,* 66 Ill. App. 100; 1 Dillon on Mun. Corp. sec. 227.

The majority required to pass an ordinance is the major part of the aldermen constituting the body at the time. *State* v. *Orr,* 61 Ohio St. 384; *Osborn* v. *Staley,* 5 W. Va. 95; *State* v. *Chapman,* 44 Conn. 595; *In re Berlin,* 22 Pa. Co. Ct. 616.

Keefe & Sullivan, also for appellee:

A majority of the aldermen elect shall constitute a quorum to do business, but a smaller number may adjourn from time to time, and may compel the attendance of absentees under such penalties as may be prescribed by ordinance. Starr & Cur. Stat. chap. 24, par. 37.

In the absence of statutory provisions applicable, the majority of the governing body of a corporation consisting of a definite number, when duly met, constitute a quorum for the transaction of business; and the majority of the vote of those present (there being a quorum) is all that is requisite for the adoption or passage of an ordinance, or the doing of any other act which the body has power to do. McQuillin on Mun. Ordinances, sec. 105, p. 166.

Paragraph 42 of article 3, chapter 24, of Starr & Curtis' Statutes, does not restrict the manner of passing ordinances for a local improvement. McQuillin on Mun. Ordinances, sec. 522; *Norwood* v. *Baker,* 172 U. S. 269; *Ladd* v. *Portland,* 32 Ore. 271; *People* v. *Mayor,* 4 N. Y. 419; *Evanston* v. *O'Leary,* 70 Ill. App. 124.

The Local Improvement act of 1897, with the amendments thereto, is a complete code as to the method whereby local improvements may be made, and being a special statute is not governed by former general statutes relating to that particular subject. *Dahnke* v. *People,* 168 Ill. 111; *People* v. *Rose,* 166 id. 422; *Railway Co.* v. *Chicago,* 148 id. 141; *Gage* v. *Chicago,* 216 id. 111.

Mr. Justice Cartwright delivered the opinion of the court:

Upon the application of the city of East St. Louis, appellee, for the confirmation of a special assessment levied to defray the cost of a sewage pumping station and a system of sewers connected therewith, N. C. McLean, appellant, whose property was assessed, filed an objection that the ordinance providing for the improvement was not legally passed by the city council, and was therefore void and of no effect. The court overruled the objection, and appellant waiving further controversy as to questions triable by jury, the court entered judgment confirming the assessment.

Article 3 of the act for the incorporation of cities and villages relates to the city council. Section 1 provides that

the city council shall consist of the mayor and aldermen; section 2, that a city shall be divided into wards and two aldermen shall be elected from each ward; section 3, that aldermen shall hold their office for a term of two years and until their successors are elected and qualified; section 4, that if any vacancy shall occur by death, resignation, removal or otherwise, such vacancy shall be filled by election; and section 13 is as follows: "The yeas and nays shall be taken upon the passage of all ordinances and on all propositions to create any liability against the city, or for the expenditure or appropriation of its money, and in all other cases at the request of any member, which shall be entered on the journal of its proceedings; and the concurrence of a majority of all the members elected in the city council shall be necessary to the passage of any such ordinance or proposition: *Provided*, it shall require two-thirds of all the aldermen elect to sell any city or school property."

The city of East St. Louis is divided into seven wards, and the city council consists of the mayor and fourteen aldermen. Charles B. Goedde, an alderman elected in the sixth ward, qualified as city treasurer of said city and acted as such from May 1, 1905. He presented his resignation to the city council and a resolution was passed accepting it. No election was called or held to elect his successor, and more than five months having elapsed after he ceased to act as alderman, the city council met on October 16, 1905. There were present at that meeting twelve aldermen, and the ordinance in question was placed upon its passage. Seven aldermen voted "aye" and five voted "nay," whereupon it was declared passed and the next day it was approved by the mayor. Appellant contends that the ordinance did not receive a majority of the votes of all the members elected in the city council, within the meaning of said section 13, and appellee contends that all the section requires is an affirmative vote of a majority of the aldermen elected who remain qualified to act as aldermen. Fourteen aldermen were elected under the act

222—33

providing that they should hold their office for the term of two years and until their successors were elected and qualified, but appellee's position is that there was a vacancy which had not been filled by election, and therefore there were only thirteen aldermen elected and composing the city council when the ordinance was voted upon.

Some of the counsel for appellee argue that section 13 relates only to ordinances and propositions creating a liability against a city or providing for the expenditure or appropriation of its money, and that all other ordinances may be passed by a majority of a quorum. They say that it is not unusual for courts, in the construction of statutes, to substitute one word for another where the plain meaning of the statute will justify it, and that by eliminating some words and substituting others this section will express what they think was the intention of the legislature. It is the rule that where the intention of the legislature is ascertained with reasonable certainty and it appears that words have been used inconsistent with such intention, a word erroneously used for another may be eliminated and the proper word substituted. Where the context affords the means of correcting a mistake in the use of language, the correction may be made for the purpose of giving effect to the intention plainly manifested in the act as a whole. But we do not agree with the theory that the legislature, in this instance, intended to limit the requirement of a majority vote to ordinances creating a liability or appropriating money. In our opinion, to make the changes suggested would be merely juggling with the words of the statute to give it a different meaning from that which was intended. The law requires that the yeas and nays shall be taken upon the passage of all ordinances, and the concurrence of a majority of the legislative body is necessary to their passage. We recognized that construction of the statute in *Hibbard & Co.* v. *City of Chicago,* 173 Ill. 91. If a proposition not in the form of an ordinance creates any liability or provides for the expenditure or appropriation of

money, the requirement is the same, while as to other propositions, whether the yeas and nays are entered upon the journal or not, the majority of a quorum is sufficient.

Another proposition advanced by the same counsel is, that section 13 has no relation at all to this ordinance because the Local Improvement act constitutes a complete code for making local improvements and does not contain the requirement in question. There is nothing in the Local Improvement act which excepts an ordinance providing for an improvement from the general provision, and we see no ground whatever for sustaining the claim that such an ordinance could be passed by a majority of a quorum. By the act which constitutes the charter of appellee a legislative body was created, consisting of fourteen aldermen and the mayor. To that body are committed the legislative powers of the city, with the requirement that the concurrence of the majority shall be necessary to the passage of an ordinance. The act provides that aldermen shall hold their office for the term of two years and until their successors are elected and qualified, and if any vacancy shall occur in the office of alderman by death, resignation, removal or otherwise, such vacancy shall be filled by election. The intention of the legislature so expressed is that the legislative body shall always consist of the full number of aldermen. Fourteen aldermen were elected, and conceding that the acceptance by Goedde of the office of city treasurer created a vacancy, the law required that an election should be held to fill such vacancy. Over five months had elapsed and the law had not been complied with. We are asked to say that under those circumstances seven aldermen could legally pass the ordinance in question. Such a construction would enable less than a majority of the city council who are in favor of the passage of an ordinance to make it a law of the municipality in case of the death, removal, resignation or disqualification of one or more members, and to possess themselves of a power which they would not otherwise have, by failing to perform the duty imposed

upon them. The number might be depleted in that way to such an extent that a minority of the council might be enabled to pass ordinances, and no construction ought to be adopted which might lead to such results. It seems to us clear that such was not the intention of the legislature.

Counsel for appellee urge their construction of the statute upon us largely upon the ground that a different construction would be detrimental to the public interest. They say that to require a majority of the whole city council for the passage of an ordinance is giving to the minority more power than is consistent with good government and enabling a few obstructionists to prevent wise and wholesome legislation. If the legislature intended to require a majority vote of the whole council it is not for the courts to authorize any other course. But we do not feel authorized to say that the requirement is unwise or contrary to a sound public policy. The ordinary course is to allow the will of a collective body to be expressed by a majority and not by a less number, and the provision certainly tends to prevent legislation which does not meet the approval of the people to be affected by it.

The position of appellee is supported by the decision in *State* v. *Orr*, 61 Ohio St. 384. In that case there was a board of ten aldermen, one of whom removed from the ward in which he was elected, and it was held that the council thereafter consisted of the nine members who still remained qualified to act, and that five of the remaining aldermen constituted a quorum. We are not impressed with the reasoning of that case, and the Supreme Court of Michigan expressed their dissatisfaction with it in the case of *Pollasky* v. *Schmid*, 128 Mich. 699, where the opposite conclusion was reached. There are several cases in California holding the same doctrine which we regard as correct. *City of San Francisco* v. *Hazen*, 5 Cal. 169; *McCracken* v. *City of San Francisco*, 16 id. 591.

The mayor is a member of the city council, but he is only the presiding officer and is not entitled to vote except in case

of a tie. He cannot be counted as a member to make a quorum, and the majority necessary to pass an ordinance is determined by counting those who are entitled to vote. The mayor in this case did not vote and was not entitled to, and his subsequent approval of the ordinance which had not been legally passed was unauthorized and did not make the ordinance legal.

In our opinion the construction given to the statute by the city court was erroneous, and its judgment is reversed and the cause remanded. *Reversed and remanded.*