## STATE EX REL. HARRY H. PETERSON v. WILLIAM A. HOPPE.[1]

March 29, 1935.

No. 30,421.

[1]Reported in 260 N. W. 215.

Harry H. Peterson, Attorney General, David J. Erickson, Assistant Attorney General, and William D. Gunn, for relator.

Rockwood & Mitchell, for respondent.

JULIUS J. OLSON, JUSTICE.

Quo warranto upon the relation of the attorney general to test the right of respondent to hold the office of alderman from the seventh ward in Minneapolis. The facts are not in dispute and may be summarized thus: Oscar J. Turner was an alderman of the seventh ward, duly elected and qualified. In December, 1934, he. resigned to accept the office of comptroller of the city, thereby creating a vacancy in the council. Minneapolis is a city of the first class and ever since November, 1920, has been governed by a home rule charter then adopted pursuant to art. 4, § 36, of the constitution and the laws of this state enacted in pursuance thereof. The elective officers of the city include the aldermen, 26 in number, two from each of the 13 wards into which the city is divided. Prior to June 20, 1932, the charter, c. 2, § 18, provided for the holding of a special election to fill a vacancy occurring in the office of alderman. On that date an amendment to that section was duly adopted. As far as here material the section as so amended now reads:

"Whenever any vacancy occurs in the office of any alderman prior to the last date for filing, by candidates for the offices of aldermen, for the next ensuing city primary election, it shall be filled for the unexpired term by nomination and election at such next city primary and general election. *In the meantime, and in the case of all vacancies occurring after such last date for filing, such vacancy shall be filled by the city council appointing a qualified voter from the ward for which the vacancy exists, to hold office only until the next city general election and until his successor is elected and qualified.*" (Italics ours.)

Chapter 2, § 2, relates to the appointment of "all other officers" and reads as follows:

"Except as in this charter otherwise specifically provided, all other officers provided for in this charter or deemed necessary for the proper management of the affairs of the city, shall be appointed by the city council. The appointment of such officers shall be determined by ballot and it shall require the affirmative vote of a majority of all. members of the city council to appoint such officers. * * *"

On January 25, 1935, a regular meeting of the city council was held, all aldermen being present, that is to say, the 25 remaining. Three ballots were cast to fill the vacancy caused by Mr. Turner's resignation. On the first ballot 13 votes were cast, of which respondent received 11; on the next two ballots he received 13 votes on each. The other 12 members did not vote. The chairman presiding held that there was no election, whereupon the council proceeded with its other business. The next meeting was held January 31. Again the question came up respecting the election of an alderman to succeed Mr. Turner. All aldermen, that is to say 25, were present. Only 13 votes were cast, respondent receiving all thereof. The presiding officer declared respondent duly elected. His oath of office was promptly administered, and he was seated as a member of the council. The attorney general then brought this proceeding to test respondent's right to hold the office.

Briefly stated, the attorney general's position is that the provisions of c. 2, § 2, relating to appointments of "all other officers," applies to appointment to fill a vacancy in the office of alderman; also, that to appoint an alderman under the circumstances hereinbefore related, a majority vote of all of the aldermen *elected* to that office must be had before the appointment can be made effective. Obviously, then, if the attorney general's position is correct, respondent is not entitled to hold the office.

In behalf of respondent it is asserted that § 2 by its terms does not apply to elective officers but, as stated in the section itself, applies only to "all other officers" than those mentioned in §1,

that is to say, it applies to all other officers except the elective officers, all of whom are enumerated in § 1. He further contends that even if § 2 be construed as effective yet he was duly appointed because he received a majority vote of all the aldermen who were then in office and that as such his appointment is regular and valid. It will thus be seen that the issue is a narrow one. If we conclude that only a majority of the 25 members of the council as then constituted may elect a successor to one who has resigned, then it is immaterial to decision here whether we construe § 2 as being applicable or if we construe § 18 as amended as being operative without reference to § 2.

Counsel for the parties have gone into the question fully and have cited many cases from other jurisdictions. A summation of the cases cited and relied upon by counsel is not deemed necessary. The question is adequately discussed in 19 R. C. L. pp. 890-891, § 190, and cases cited under notes. From this authority it seems clear that a quorum of a municipal council has the right to take any action within the power of the entire council unless limited by statute, charter, or by-laws governing it. However, there are many decisions to the effect that a measure is not carried unless it has the vote of a majority of those present at the meeting. It is also the rule that where a certain matter must be enacted by unanimous vote, if the vote of those present at the meeting is unanimous, that satisfies the requirement. If a larger proportion than a bare majority is required, then the requisite proportion of those present and voting is usually deemed sufficient provided a quorum is present. The remainder of that section reads as follows, and we quote the same in full because of its importance and applicability here:

"When, however, the statute requires the vote of a majority or a greater proportion of 'the members' of the council it has been held that a measure cannot be enacted by a majority of those present, unless they also constitute a majority of all the members of the council, both present and absent. A statutory provision that a measure may be passed only by the vote of a certain proportion of the 'entire council' has been construed to mean all the members

190

of the board in existence at the time that such ordinance is passed, and not all of those originally elected. It has been held, however, that when a statute provides that the vote of two-thirds of the members *elected* to the common council shall be necessary to pass an ordinance of a certain character the fact that there are vacancies in office due to death or resignation does not diminish the number of votes necessary to pass the ordinance." (Italics ours.)

Referring to the cases therein cited, it seems to be clear that where the requirement is that a majority or other proportion of "the members *elected*" is required there must be such affirmative vote as will satisfy the requirement of *all who were elected* to that particular body. This rule is illustrated in City of San Francisco v. Hazen, 5 Cal. 169 (175). It was there held that because the requirement was an affirmative vote of "all the members *elected*," there being one vacancy, the vacant office must also be considered in determining the total number of members as and when elected. Subsequent cases decided by that court and adopting the same view are McCracken v. City of San Francisco, 16 Cal. 591; Pimental v. City of San Francisco, 21 Cal. 351; Satterlee v. City of Francisco, 23 Cal. 314. To the same effect are Peck v. Berrien County Supervisors, 102 Mich. 346, 60 N. W. 985; Pollasky v. Schmid, 128 Mich. 699, 87 N. W. 1030, 55 L. R. A. 614, 92 A. S. R. 560; McLean v. City of East St. Louis, 222 Ill. 510, 78 N. E. 815; Wood v. Gordon, 58 W. Va. 321, 52 S. E. 261. There are other cases of similar nature and import, but further citation of authorities is not deemed necessary except that to these should be added the following Minnesota cases: Board of Supervisors of Ramsey Co. v. Heenan, 2 Minn. 281 (330); State ex rel. Eastland v. Gould, 31 Minn. 189, 17 N. W. 276; Tracy C. T. Co. v. City of Tracy, 143 Minn. 415, 176 N. W. 189. In the Heenan case [2 Minn. 282] the court quoted the constitutional provision (art. 4, § 13):

"No law shall be passed unless voted for by a majority of all the members *elected* to each branch of the legislature."

Properly enough the court held that the language meant exactly what it stated and that as such a majority of the quorum would

not suffice. To the same effect is the Gould case. In the Tracy case five members constituted the council of the city. The charter provided that every ordinance, order, or resolution appropriating money, in order to be effective, required a four-fifths vote of *all the members* of the city council. At a meeting of the council only three were present, and of course only three could vote. There too it was properly held that the city charter requirements had not been complied with.

The cases upon which respondent relies distinguish between the phrase "all members" (or phrases of similar import) and those wherein the phrase "all the members elected" is used. The quotation from 19 R. C. L. *supra*, sustains the view advanced by respondent, namely, that a provision that a measure may be passed only by the vote of a certain proportion of the entire council means the members of the board in existence at the time the ordinance is passed and not all of those originally elected. Directly in point is State ex rel. Wilson v. Willis, 47 Mont. 548, 552, 133 P. 962, 964. There the court was faced with two conflicting requirements. Under one section of the statute "a majority of the whole number of the members elected" was required, while another section provided that "a majority vote of the members" was needed to make action effective. So the distinction, if such there is, came directly before the court for decision. The court came to the conclusion that the expression "a majority of the members" meant that there must be a majority of those constituting the actual membership of the body at the time the vote was cast. The following quotation is particularly appropriate to the facts in the instant case:

"It is to be observed that by section 3236 'a majority vote of the members' is required to fill a vacancy, whereas two-thirds 'of all the members elect' is required to remove from office. Both of these phrases are designed as bases upon which to determine the sufficiency of the vote, and it must be presumed that in the enactment of this statute the legislature had in mind a distinction as real as the language, under settled construction, expresses. No case called

192

to our attention or revealed by our own researches, nor any analysis of the language independent of authority, suggests that the phrase 'a majority of the members' could mean more than a majority of those constituting the actual membership of the body at the time; so that, if the full membership is sixteen but at a given time has been in fact reduced by the resignation of one, there are but fifteen members. (State ex rel. Attorney General v. Orr, 61 Ohio St. 384, 56 N. E. 14; People ex rel. Funk v. Wright, 30 Colo. 439, 71 Pac. 365; Board of Commrs. v. Wachovia Land & Trust Co. 143 N. C. 110, 118 Am. St. Rep. 791, 55 S. E. 442.) Hence, as long as there is a quorum present, a majority of fifteen, or eight, will elect to fill a vacancy. (Nalle v. City of Austin, 41 Tex. Civ. App. 423, 93 S. W. 141; People ex rel. Funk v. Wright, *supra.*)"

In a later case, State ex rel. Klick v. Whittmer, 50 Mont. 22, 144 P. 648, the same result was reached. In Commissioners v. Wachovia L. & T. Co. 143 N. C. 110, 113, 114, 115, 55 S. E. 442, 443, 118 A. S. R. 791, the court said:

"It is argued by the defendant that the ordinance is not valid unless passed by three-fourths of the entire board; that the entire number is seven, and five is not three-fourths of seven; that in the construction of the language of the charter, there cannot be taken into consideration vacancies, however *bona fide* they may be, and the language means three-fourths of the entire board provided for by the charter.

"The authorities which the learned counsel for the defendant have called to our attention do not bear out his contention that the language of the charter should be construed as if it read three-fourths of the entire board elected. Such a provision is not uncommon in charters of municipal corporations, and the fact that the word 'elected' was omitted after the word 'board' is indicative to us that the legislature intended that three-fourths of the entire membership of the board in existence at the passage of the ordinance should have power to pass such an ordinance. Wherever the special provision in such charters contains the words 'entire board elected,' or similar terms, it is invariably held that all the

members elected must be taken into account.  Dillon on Mun. Corp., sec. 281.  We are unable to find any judicial decision which places the same construction upon the words 'entire board,' when the word 'elected' does not follow.

"The term board, when used in municipal charters, seems to have two meanings—one abstract, having reference to the legislative creation, the corporate entity, which is continuous, and the other referring to its members, the individuals composing the board. The words 'entire board,' as used in the Salem charter, refer to the membership of the board, and were evidently inserted to guard against hasty municipal legislation by requiring three-fourths of all the members to concur.  As the board, the corporate body, was composed of only six members when this ordinance was finally adopted, five of its members being present and voting for its passage, the requirements of the charter were fully complied with. * * *

"We are of the opinion, therefore, in this case that the words 'entire board' mean all the members of the board in existence, and not all those originally elected.  When the five members assembled they constituted a legal board, and a majority of that five had the right to pass any ordinary matter; but as to borrowing money or creating indebtedness, such ordinances must receive the sanction of three-fourths of the then membership of the board, whether present or not."

In Nalle v. City of Austin, 41 Tex. Civ. App. 423, 431, 93 S. W. 141, 145, it appears that the charter of the city of Austin provided for a council of 14 members; also that a majority of the members of the whole council was necessary to pass a revenue ordinance. One alderman died.  Seven of the remaining aldermen voted for an ordinance fixing a tax levy.  The court in sustaining the validity of the ordinance said:

"The 'whole council' referred to means the whole board of aldermen, as distinct from the quorum thereof.  * * *  As said above, our view is that the legislative council then consisted of the thirteen aldermen, with the mayor authorized to exercise the ordinary func-

194

tions of a presiding officer over a deliberative body. The death of one member reduced the board to thirteen, as we do not think that vacant position should be reckoned in determining what constitutes a majority of the board. Seven being a majority of the whole board or council, as then constituted, it follows that the ordinance * * * received the necessary majority without the vote of the mayor."

The New Jersey court has arrived at the opposite conclusion. The cases from that jurisdiction (heretofore cited) sustain relator's position. In the case of Schermerhorn v. Jersey City, 53 N. J. L. 112, 20 A. 829, the court held that "all the members" of the council meant all members originally elected and not the actual members as reduced by vacancies. In two subsequent cases decided by that court the Schermerhorn case is followed. In none of these is the distinction between the phrase "members elected" and "all the members" of the council considered or discussed. So that court has not been called upon to determine whether these phrases are of the same import. But it is significant to note the fact that that court is the only one, as far as we are informed, sustaining that view. In Missouri Pac. Ry. Co. v. State of Kansas, 248 U. S. 276, 39 S. Ct. 93, 63 L. ed. 239, 2 A. L. R. 1589, the syllabus (L. ed.) reads:

"A two-thirds vote in each House of Congress of the members present, there being a quorum, is all that is required to pass a bill over the President's veto, by U. S. Const. art. 1, § 7, cl. 2, providing that in case a bill passed by Congress is disapproved by the President, 'he shall return it, with his objections, to that House in which it shall have originated, who shall enter the objections at large on their journal and proceed to reconsider it. If, after such reconsideration, two-thirds of that House shall agree to pass the bill, it shall be sent, together with the objections, to the other House, by which it shall be likewise reconsidered, and if approved by two-thirds of that House, it shall become a law.' "

The court in discussing the facts in that case quoted with approval a ruling made by the Speaker of the House, Mr. Reed, in 1898. The vote was upon the question of overriding the President's

veto. In replying to an inquiry from the floor of the house as to whether the vote was in compliance with the two-thirds rule fixed by the constitution, the vote not being two-thirds of all the members elected, the Speaker said, 248 U. S. 283:

"The question is one that has been so often decided that it seems hardly necessary to dwell upon it. The provision of the Constitution says 'Two-thirds of both Houses.' What constitutes a House? A quorum of the membership, a majority, one-half and one more. That is all that is necessary to constitute a House to do all the business that comes before the House. Among the business that comes before the House is the reconsideration of a bill which has been vetoed by the President; another is a proposed amendment to the Constitution; and the practice is uniform in both cases that if a quorum of the House is present, the House is constituted and two-thirds of those voting are sufficient in order to accomplish the object."

And, said the court, 248 U. S. 284:

"While there is no decision of this court covering the subject, in the state courts of last resort the question has arisen and been passed upon, resulting in every case in the recognition of the principle, that in the absence of an express command to the contrary, the two-thirds vote of the House required to pass a bill over a veto is the two-thirds of a quorum of the body as empowered to perform other legislative duties. Farmers Union Warehouse Co. v. McIntosh, 1 Ala. App. 407, 56 So. 102; State v. McBride, 4 Mo. 303, 29 Am. Dec. 636; Southworth v. Palmyra & Jackson R. R. Co. 2 Mich. 287; Smith v. Jennings, 67 S. C. 324, 45 S. E. 821; Green v. Weller, 32 Miss. 650. We say that the decisions have been without difference, for the insistence that the ruling in Minnesota ex rel. Eastland v. Gould, 31 Minn. 189, 17 N. W. 276, is to the contrary, is a wholly mistaken one, since the decision in that case was that as the state constitution required a vote of the majority of all the members elected to the House to pass a law, the two-thirds vote necessary to override a veto was a two-thirds vote of the same body."

It will thus be seen that the Federal Supreme Court distinguishes between those cases where the requirement is two-thirds majority of the members of the House and where, as under our constitution, the requirement is a majority of "all the members elected to the House."

This court has not heretofore been called upon to pass upon this question. Our cases hereinbefore cited obviously do not cover the ground. We are thus left free to choose which course to take.

In view of what has been stated, it seems to us that the better rule is that which permits the governing body to function by a majority of those constituting that body as and when the legislation or other act takes place. Relator urges the adoption of a rule of construction whereby 14 affirmative votes of the Minneapolis board of aldermen is required to appoint a successor in case of vacancy in that office even where, as here, only 25 members are left. The reason assigned is that "it requires action to be based on affirmative support of the councilmen. *It abolishes rule by negative action and by minorities."* (Italics ours.) Were we to adopt the rule of construction contended for by him the very opposite result would obtain, the minority would be in control by *preventing* action, and would thereby defeat the obvious intent and purpose of that charter provision. A municipality like any other corporation must function and can only do so through its officers. The people of Minneapolis provided, when they adopted the amendment respecting the filling of vacancies in the board of aldermen, a method whereby they would be promptly represented in case of vacancies. As the situation stands in the instant case, if relator's position is to be sustained, it means that the minority has power to prevent the filling thereof. Carried to its logical extreme, if the council were reduced in number through deaths, resignations, or removals to 15 or 16 members, one or two obstructionists could defeat any action. If the charter requirement were for unanimous choice of a successor, it would mean that upon the death of an alderman no successor could be appointed even where all survivors were favorable to such choice. We do not believe that the people of Minneapolis intended to permit a deadlock. The broad power

granted by the amendment adopted in 1932 was intended to expedite the business of electing a successor. Public policy demands that a majority of those remaining should have power to act. This majority should be computed upon the basis of membership as it exists after the vacancy, not upon the total number elected in the first instance. If such had been the intention of the amendment it would have been easy enough to so say. We conclude that respondent was lawfully appointed, and the writ will be discharged.

So ordered.

DEVANEY, CHIEF JUSTICE (dissenting).

I dissent. The council placed a practical construction on the charter provision when, on January 25, 1935, they took the view that 14 votes were necessary to choice and that Hoppe, having received only 13 votes, was not elected. Their action six days later in declaring Hoppe elected on receipt of 13 votes seems to me to be unauthorized under the provisions of the charter. In my view c. 2, § 2, of the Minneapolis city charter, quoted in the majority opinion and requiring "the affirmative vote of a majority of all members," required 14 votes to elect Turner's successor. Schermerhorn v. Jersey City, 53 N. J. L. 112, 20 A. 829; Reihl v. Wynne, 105 N. J. L. 507, 146 A. 204. An attempted distinction between the phrase "all members" and the phrase "all members elected" is subtle and not well founded. Consequently, I believe such cases as City of San Francisco v. Hazen, 5 Cal. 169; Wood v. Gordon, 58 W. Va. 321, 52 S. E. 261; Pollasky v. Schmid, 128 Mich. 699, 87 N. W. 1030, 55 L. R. A. 614, 92 A. S. R. 560; and McLean v. City of East St. Louis, 222 Ill. 510, 78 N. E. 815, are direct authority against the majority opinion. I believe they should be followed, not distinguished.