RAM DEVELOPMENT COMPANY v.
JAMES SHAW AND OTHERS.

244 N. W. 2d 110.

June 18, 1976—No. 46130.

*Carl F. Dever*, City Attorney, and *Deborah Hedlund*, Assistant City Attorney, for appellants. .

*Robins, Meshbesher, Singer & Spence, Gerald M. Singer*, and *John Clifford*, for respondent.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

The city of Minnetonka and its councilmen appeal from an order of the district court in certiorari proceedings remanding a rezoning ordinance as illegally passed by the councilmen. We affirm.

Minnetonka Councilman James Shaw, at the regularly called city council meeting October 21, 1974, moved to rezone certain property from multiple to single-family residence. Published notice of public hearing was given on October 24; proper written notice was mailed to property owners on October 25; and the property was posted October 28.[1] Public hearing was held before

---

[1] See, Minn. St. 462.357.

the Minnetonka Planning Commission on November 7. The commission received a petition from 159 property owners who favored rezoning, heard further testimony in support of the motion, and recommended approval of rezoning.

On November 18, 1974, the rezoning proposal passed the Minnetonka City Council by a vote of five ayes, one abstain, one pass. The presence of "Mr. Gerald Singer, representing the owner of the property," and his opposition was noted in the minutes. On December 2, 1974, the first reading of the ordinance took place. On December 16, 1974, the second reading took place, and the ordinance was finally passed by a vote of four ayes, two abstentions, and one pass. Again, Singer's presence was noted.

The ordinance was published on December 19, 1974, and became effective January 19, 1975. Ram Development Company served the city clerk for Minnetonka with a writ of certiorari on February 28, 1975, challenging the passage of the ordinance. Six of the seven councilmen were named as parties in the writ, but no councilman was ever served. The district court ordered that the ordinance be remanded on June 20, 1975, and the city appeals from that order.

Three issues are raised on appeal:[2]

(1)  Is Ram Development a proper party to bring certiorari?

(2)  Was the writ timely served on an appropriate party?

(3)  Does Minn. St. 462.357, subd. 2, which provides for passage of a zoning ordinance "by a two-thirds vote of all of its [council's] members," authorize passage on a vote of four ayes, two abstentions, and one pass when the council has seven members?

█  The city initially challenges the standing of Ram Development to contest its ordinance in a certiorari proceeding. The city apparently does not dispute the deeds and documentary evidence in the record or the determination of the trial court that Ram Development became the owner of the rezoned property on

---

[2] No question was raised on this appeal as to the use of certiorari. Since this issue was not presented here, we offer no opinion thereon.

October 7, 1969. The city argues that the court must confine itself to the return to the writ, which it claims does not show ownership in Ram Development. It cites In re Acquisition of Flying Cloud Airport, 226 Minn. 272, 32 N. W. 2d 560 (1948).

In the instant case, in contrast to Flying Cloud, it is apparently uncontested that Ram is in fact the owner. Furthermore, the return shows appearances by Gerald Singer as counsel for the "owner" at two meetings. This is a sufficient prima facie showing of ownership on the return to cast upon the city the burden of showing lack of standing. The city's argument is without merit.

■ The city also challenges the timeliness and nature of service. The statutory scheme governing writs of certiorari requires such writs to be issued within 60 days "after the party applying for such writ shall have received due notice of the proceeding sought to be reviewed thereby," Minn. St. 606.01, and "served upon the adverse party within such period of 60 days." Minn. St. 606.02.

The time sequence in this action was as follows:

December 16, 1974—ordinance passed.

December 19, 1974—ordinance published.

January 19, 1975—ordinance becomes effective.

February 28, 1975—service of writ on city clerk.

We hold that Ram Development had 60 days from the date the ordinance became effective to serve the writ. The action of the council was not final until that date, and until then no live controversy concerning its validity existed. Therefore, service on February 28 was timely.

One additional argument of the city relating to service of the writ deserves brief mention. The city argues that the writ was not effective because it was served only on the city clerk and not personally on the councilmen. The city cites State ex rel. Berg v. Village Council of Blackduck, 107 Minn. 441, 120 N. W. 894 (1909), which holds:

"The village council of the village of Blackduck, after notice

and a hearing, revoked a liquor license held by the relator, Berg. On the application of Berg, what the appellant calls a writ of certiorari issued out of the district court for the purpose of bringing up the record for review. After a hearing the court quashed the so-called writ, and Berg appealed to this court.

"No proper writ of certiorari was issued. What passed by that name in the proceedings was no more than a subpoena duces tecum. It was directed to certain individuals by name, who were described as the president and the recorder, respectively, of the village. The writ should have been directed to the common council of the village of Blackduck, and commanded it to make return of its proceedings in the matter of the revocation of the license. See Dunnell, Pr. § 2647."

There is a fatal flaw in the city's argument—the case before us involves a city ordinance passed by the city council and published, certified, and promulgated by city officials. Ram alleges that these acts were illegal. The city itself is, under these circumstances, a proper party to these proceedings and has apparently not contested that fact. Service on the city is accomplished by serving the city clerk under Rule 4.03(e)(2), Rules of Civil Procedure. While the Rules of Civil Procedure would not control if there were a preexisting statutory or common-law rule to the contrary (see Rule 81.01[1] and Appendix A), State ex rel. Berg v. Village Council of Blackduck, *supra*, involving a license proceeding where the city was not joined, is not in point. Under these circumstances, Rule 4.03(e)(2) should govern for purposes of clarity and uniformity. We therefore hold that the city's procedural objections to the writ are unfounded.

■ The basis for Ram Development's attack on the ordinance is an alleged failure to comply with Minn. St. 462.357, subd. 2, which provides in relevant part:

"* * * [T]he governing body may adopt and amend a zoning ordinance by a two-thirds vote of all its members."

Throughout the ordinance proceedings, the city council had a

total membership of seven. The vote on the ordinance was: Four ayes, two abstentions, one pass. Ram argues that 2/3 x 7 = 4 2/3 or 5 votes required for passage. Since the ordinance got only four votes, it must fail. The city's arithmetic is slightly different. It argues that the two-thirds requirement means two-thirds of all members legally casting votes. Since passes and abstentions are not cast votes, that number is 2/3 x 4 = 2 2/3 or 3 votes required to adopt. The ordinance received four votes and, therefore, according to the city, passed.

While this court has not passed on the problem involved in the instant case, it has given strong indications of its opinion on similar issues. In State ex rel. Peterson v. Hoppe, 194 Minn. 186, 260 N. W. 215 (1935), an ordinance required for the appointment of a city council officer, "the affirmative vote of a majority of all members of the city council." A vacancy occurred on the 26-member council and a vote was taken to fill it. All 25 remaining aldermen were present; 13 voted for respondent, the remaining 12 did not vote. Respondent was declared elected. The election was challenged, and this court chose to decide the case on a single issue: Whether the ordinance required a majority vote of all members currently sitting (or 13) or of all possible members, including the vacancy (or 14). The court held that the ordinance required a majority of members currently sitting:

"In view of what has been stated, it seems to us that the better rule is that which permits the governing body to function by a majority of those constituting that body as and when the legislation or other act takes place. Relator urges the adoption of a rule of construction whereby 14 affirmative votes of the Minneapolis board of aldermen is required to appoint a successor in case of vacancy in that office even where, as here, only 25 members are left. The reason assigned is that 'it requires action to be based on affirmative support of the councilmen. *It abolishes rule by negative action and by minorities.*' (Italics ours.) Were we to adopt the rule of construction contended for by him the very opposite result would obtain, the minority would be in con-

trol by *preventing* action, and would thereby defeat the obvious intent and purpose of that charter provision. A municipality like any other corporation must function and can only do so through its officers. The people of Minneapolis provided, when they adopted the amendment respecting the filling of vacancies in the board of aldermen, a method whereby they would be promptly represented in case of vacancies. As the situation stands in the instant case, if relator's position is to be sustained, it means that the minority has power to prevent the filling thereof. Carried to its logical extreme, if the council were reduced in number through deaths, resignations, or removals to 15 or 16 members, one or two obstructionists could defeat any action. If the charter requirement were for unanimous choice of a successor, it would mean that upon the death of an alderman no successor could be appointed even where all survivors were favorable to such choice. We do not believe that the people of Minneapolis intended to permit a deadlock. The broad power granted by the amendment adopted in 1932 was intended to expedite the business of electing a successor. Public policy demands that a majority of those remaining should have power to act. This majority should be computed upon the basis of membership as it exists after the vacancy, not upon the total number elected in the first instance. If such had been the intention of the amendment it would have been easy enough to so say. We conclude that respondent was lawfully appointed, and the writ will be discharged." 194 Minn. 196, 260 N. W. 220.

What was implicit in Peterson was made explicit in Van Cleve v. Wallace, 216 Minn. 500, 508, 13 N. W. 2d 467, 470 (1944). In construing an identical provision, the court relied on the syllabus in Peterson:

"In State ex rel Peterson v. Hoppe, 194 Minn. 186, 260 N. W. 215, 216, the rule governing was expressed in the syllabus:

" 'Where by charter or statute the vote of a majority of the members of the council is required to give effect to a measure, such measure cannot be enacted by a mere majority of a quorum

unless those voting for the measure also constitute a majority of all the members of the council, both present and absent.' "

While the above cases may be distinguished from the present one because of the "affirmative vote" language, they are nonetheless persuasive evidence of this court's position that all members means all current members whether present or absent, voting or not.

Much case law has been generated regarding the problems of abstention, sickness, and resignation as they affect the requisite voting majority. Abstention in particular is thoroughly dealt with in Annotation, 63 A. L. R. 3d 1072. That annotation reports a split of authority on whether abstentions are counted under ordinances referring to a certain proportion of "all of the members," but places Minnesota (citing Van Cleve v. Wallace, 216 Minn. 500, 13 N. W. 2d 467 [1944]) with the majority of the cases it cites as supporting the view that abstentions do not reduce the required number of votes. Annotation, 63 A. L. R. 3d 1091 to 1099. One interesting case taking the opposite position is Northwestern Bell Tel. Co. v. Board of Commrs. of City of Fargo, 211 N. W. 2d 399 (N. D. 1973). In that case a statute required "a majority of all of the members of the governing body" for passage of a city ordinance. The votes were two ayes, one nay, and two passes on a five-member governing body. The two passing members were employees of Northwestern Bell, and the ordinance invoked a gross-revenues tax on that corporation. The court reviewed cases in other jurisdictions and, in support of its premise that members have a duty to vote if not absent, noted another section of the North Dakota statutes requiring yeas and nays to be recorded. The court concluded that passed votes should be counted with the majority:

"For reasons stated above, we believe such cases present questions different from our question here. The duty to vote is present if the member is present.

"An additional reason for this result is adverted to in a few cases. It is that it is not possible to disregard a passed vote. It

is all very well to say, as some decisions do, that it is not permissible to count a non-vote as a vote, but the fact is that if the non-vote is not counted in favor of a proposition, it may as well be (and in effect is) counted against it. The case now before us is a perfect illustration. If we adopt Bell's position and hold that three affirmative votes are required in the present case and a passed vote does not count affirmatively, we have two votes in favor and one against, with three needed for passage. The result is identically the same as if we counted the passed votes as negative votes, which would give a result of two aye and three no votes. In either case, the result is to defeat the proposal.

"This case is also a good illustration of the difficulties created by the rule advocated by Bell. If two disqualified members can abstain from voting, and the requirement of 'a majority of all of the members' (Sec. 40-11-02, N.D.C.C.) is construed to mean three of the five members, regardless of abstentions, then the nonvoting members are forcing the other members to agree, not by a majority vote but by a unanimous vote, in order to accomplish anything. This is an incentive to inaction. And, of course, if three members abstained, nothing could be done, although all members were present." 211 N. W. 2d 403.

This decision is distinguishable from the instant case on several grounds: (1) The existence of the yeas and nays statute; (2) the conflict-of-interest problem; (3) the two-thirds requirement in the Minnesota statute, which conceivably might be construed as an intentional incentive to inaction.

Based on our previous cases and the language of Minn. St. 462.357, subd. 2, we find Ram's arithmetic more persuasive on the facts of this case. The statute requires two-thirds of *all members*. The effective membership of the council was not decreased by the abstentions. Those who abstained remained "members" and should be figured in the total membership for the purpose of calculating the two-thirds vote requirement. While this may result in inaction in some cases, this court is not free to further construe the statute in the face of such clear language.

Knopp v. Gutterman, 258 Minn. 33, 102 N. W. 2d 689 (1960); 17B Dunnell, Dig. § 8938. We offer no opinion, however, regarding the special problems of vacancy, absence, illness, or conflict of interest since they are not raised by the record in the instant case.

The district court was correct in holding the rezoning ordinance invalid for failure to garner the required two-thirds vote.

Affirmed.