(No. 20084.—

THE VILLAGE OF HAZELCREST, Appellee, *vs.* EDWARD LAMBERT *et al.* Appellants.

*Opinion filed February 18, 1931.*

H. IRVING RIPSTRA, (JOHN CHARLES LEWE, of counsel,) for appellants.

MALONEY, WOOSTER & WHITESIDE, for appellee.

Mr. COMMISSIONER EDMUNDS reported this opinion:

This is an appeal by eight objectors from a judgment confirming a special assessment for a local improvement. It is stipulated that when the ordinance providing for filing

of the petition came before the village board a motion was made to pass it, and this motion was seconded. Three trustees voted for the ordinance and three trustees voted against it. The president of the board, having declared a tie existing, cast his vote in favor of the ordinance and declared it passed. The point made by appellants is that the ordinance is invalid because it did not receive the vote of a majority of all the members elected to the village board, in accordance with the requirements of the act to provide for the incorporation of cities and villages, approved April 10, 1872.

Section 8 of article 11 of the act in question originally provided that in each village organized under the act six trustees should be elected, to hold office for one year; that these trustees should choose one of their own number president, and that "wherever the words 'city council' or 'mayor' occur in this act, the same shall be held to apply to the trustees and president of such village, so far as the same may be applicable." (Rev. Stat. 1874, p. 243.) Although the section was amended in 1879 the changes then made are not material from the standpoint of the present case, and the provision that the words "city council" or "mayor" shall be held to apply to the trustees and president of a village still remains. (Cahill's Stat. 1929, chap. 24, par. 260.)

In 1887 an act entitled, "An act concerning villages and incorporated towns," (Laws of 1887, p. 116,) was adopted, providing as follows:

"Sec. 1. That in addition to the trustees and officers required by law, a president of each and every village and incorporated town shall hereafter be elected annually by the voters of such village or town, at the regular election of such village or town, commencing with the election of such village or town held in the year A. D. 1888, and such president of any village or incorporated town shall hold his office for the term of one year and until his successor is elected and qualified. The president of any village or incorporated town shall be president of the board of trustees

thereof, and shall preside at all meetings of said board, and shall have the same powers and perform the same duties as are or may be given by law to the president of boards of trustees in villages, but he shall not vote except in case of a tie, when he shall give the casting vote.

"Sec. 2. All acts and parts of acts in conflict with the provisions of this act are hereby repealed."

In 1903 the act of 1887 was amended to provide a two-year term for the president of the board, and it was also provided that the president "shall have the same powers and perform the same duties as are or may be given by law to the mayor in cities, or that have heretofore been given to the president of the board of trustees in villages, but he shall not vote, except in case of a tie, when he shall give the casting vote." (Cahill's Stat. 1929, chap. 24, par. 1196.) Section 9 of article 11 of the act of 1872 originally provided that "the president of the board of trustees shall perform the duties and exercise the powers conferred upon the mayor of a city not exceeding five thousand inhabitants," and that the president "shall have the right to vote as a trustee at any meeting of the trustees; but when he shall have so voted shall not have the right to give the casting vote." It was also provided that the president and trustees should have the same duties and powers as the mayor and city council in cities not exceeding five thousand inhabitants. (Rev. Stat. 1874, p. 243.) Section 9 was amended in 1889. As amended it contained no reference to the right of the president to vote, but the section provided that "the president of the board of trustees shall perform the duties and exercise the powers conferred upon the mayor of a city," and that "the trustees shall perform the duties and exercise all the powers conferred upon aldermen in cities; and the president and board of trustees may exercise the same powers conferred upon the mayor and city council of cities, and pass ordinances in like manner." (Cahill's Stat. 1929, chap. 24, par. 264.) Section 10 of

article 11 of the act of 1872, which has not been amended, provides: "The style of ordinances passed in villages shall be as follows: 'Be it ordained by the President and Board of Trustees of the Village of ..........,' (as the case may be)." (Ibid. par. 265.) Section 11 of said article 11 provided that "the president and board of trustees may appoint a clerk *pro tempore,* and whenever necessary to fill vacancies; and may also appoint a treasurer, one or more street commissioners, a village constable, and such other officers as may be necessary." (Rev. Stat. 1874, p. 243.) This section was amended in 1905 by substituting the word "marshal" for the word "constable," but in other respects it is the same as when adopted. (Cahill's Stat. 1929, chap. 24, par. 266.)

Referring to those portions of the act of 1872 that deal primarily with cities as distinguished from villages, section 1 of article 3 provides: "The city council shall consist of the mayor and aldermen." (Cahill's Stat. 1929, chap. 24, par. 31.) Section 6 of article 2 of the act provides: "The mayor shall preside at all meetings of the city council, but shall not vote except in case of a tie, when he shall give the casting vote." (Ibid. par. 20.) Section 13 of article 3 of said act provides: "The yeas and nays shall be taken upon the passage of all ordinances, and on all propositions to create any liability against the city, or for the expenditure or appropriation of its money, and in all other cases at the request of any member, which shall be entered on the journal of its proceedings; and the concurrence of a majority of all the members elected in the city council shall be necessary to the passage of any such ordinance or proposition: *Provided,* it shall require two-thirds of all the aldermen elect to sell any city or school property." (Ibid. par. 44.) Section 8 of article 3 provides: "A majority of the aldermen elect shall constitute a quorum to do business." (Ibid. par. 39.)

The argument of appellants is based upon the premise that the president of the board of trustees of the village of Hazelcrest cannot be held to have been a member of the village board, and that therefore "a majority of all the members elected" did not concur in the passage of the ordinance, as required by section 13 of article 3 of the act of 1872. Consideration of the above statutory provisions in their proper relation to each other shows that this premise is without substantial foundation. Under sections 8 and 9 of article 11 of the act of 1872 the president, being chosen from the trustees of the board, was necessarily a member of the village board. In 1887 another statute was passed providing for the election of a president in addition to the trustees. It was further provided that he should have the same powers and duties as presidents of boards of trustees formerly had, but it was also provided that he should not vote except in case of a tie, when he should give the casting vote. By the 1903 amendment to this act of 1887 the president of the board was vested with the same powers and duties as are given mayors of cities as well as those of presidents of village boards. By virtue of section 8 of article 11 of the act of 1872, wherever the words "city council" or "mayor" occur in the act the same shall be held to apply to the trustees and the presidents of village boards, and it is expressly provided by section 1 of article 3 of the same act that the city council shall consist of the mayor and aldermen. Provision for the mayor to vote in case of a tie is made by section 6 of article 2 of the act of 1872. Although the right of presidents of village boards to vote, save in case of a tie, was, in effect, cut off by the act of 1887 and by that act as amended in 1903, there is nothing contained therein, or in any other statutory provision, requiring the conclusion that the right of the president to vote in case of a tie was restricted to situations such as were not covered by the provisions of section 13 of article 3 of the act of 1872, and that section 13 must now be held

to say, in effect, that the concurrence of a majority of all the "aldermen" elected is necessary to the passage of all ordinances, and such propositions as fall within its purview. In section 13 itself it appears that a distinction was clearly drawn between "members elected" and "aldermen." The concurrence of a majority of "members elected" is there prescribed for the passage of all ordinances and propositions to create liability against the city or for the expenditure or appropriation of its money, but the section proceeds to require two-thirds of "all the aldermen elect" to sell any school or city property. Such distinction has been further recognized in section 8 of article 3, requiring a majority of the "aldermen elect" for a quorum.

Appellants argue, nevertheless, that prior to the act of 1903 "no tie could ever exist on the passage of an ordinance because the entire board of trustees consisted of six members, and a majority could in no event be less than four. There could be no object in creating the office of president to break a tie when no tie could ever exist. The legislature felt no necessity for amending the act until more than thirty years elapsed; because the clear and unambiguous language of section 13 of article 3 provided for a concurrence of a majority of all the members elected. It is very obvious that the legislature did not intend to repeal by implication any part of section 13 of article 3, but that, on the contrary, it sought to expedite village business by giving the power to break a tie whenever it arose out of the great volume of municipal business that comes before the legislative body of the village, relating to all matters except ordinances and provisions creating liability or for the expenditure or appropriation of money;" that the necessity for giving the president the right to vote never existed where ordinances were involved, and that since no occasion could arise, under any circumstances, which would necessitate giving the president the casting vote under section 13 of article 3, it is therefore a reasonable deduction to say

that the amendment of 1903 was intended by the legislature to give the president the casting vote in all cases which did not arise under section 13 of article 3. It is somewhat difficult to follow this line of reasoning. In the first place, it would seem obvious that with only six members on the board a tie could exist on the passage of ordinances, and an object therefore did exist to break it. In the second place, the legislature did not wait until 1903 to provide for the election of a president in addition to the trustees but did so in 1887. In 1889 section 9 of article 11 of the act of 1872, which originally provided that the president of the village board should have the right to vote as a trustee but that when he had so voted he should not have the right to give the casting vote, was amended, and reference to the right of the president to vote was eliminated. The amendment was obviously framed in the light of the act of 1887, which provided for a president in addition to the six members of the board of trustees, and which dealt with and defined the voting power of such president by limiting it to cases where there was a tie. In the third place, it is not apparent that specific limitations of any kind were anywhere put upon the exercise by the president of the right, affirmatively given, to break a tie, and no substantial reason appears for saying that such power was intended to be conferred only in situations not covered by section 13 of article 3.

Appellants call attention to *McLean* v. *City of East St. Louis,* 222 Ill. 510. There the city council of East St. Louis was stated by the court to consist of the mayor and fourteen aldermen. One alderman had resigned. At a meeting where twelve aldermen and the mayor were present an ordinance providing for a local improvement was placed upon its passage, seven aldermen voting aye and five voting nay. The mayor did not vote. The ordinance was declared passed. It was held that the ordinance was invalid because it had not received a majority vote of all the members elected to the city council, the expressed in-

tention of the legislature being that the legislative body shall always consist of the full number of aldermen. The case at bar presents an altogether different situation. Appellants also rely upon *People* v. *Dreher,* 302 Ill. 50, where it was held that a city council cannot remove a mayor from office. The contention that the president of the board in the present case was not qualified to vote to break the tie is not borne out by the result there reached or by the language of that opinion.

The judgment of the county court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*