COMMISSIONERS v. TRUST COMPANY.

(Filed November 21, 1906).

*Statutes—"Aye and No" Vote—Entries on Journals—Municipal Corporations—Ordinances—Enactment.*

1. An entry on the legislative journal that "The bill passed its second reading, ayes 39, noes .., as follows:" then follows a list of those voting in the affirmative, without any reference to those voting in the negative, indicates that the bill passed by a unanimous vote and that there were no names to be recorded in the negative, and is a compliance with the requirements of Art. II, sec. 14, of the Constitution, that the ayes and noes shall be entered on the journals. *Debnam v. Chitty*, 131 N. C., 657, overruled.

2. Where the charter of a town provided that the Board of Commissioners might create a debt only after they had passed an ordinance by a "three-fourths vote of the entire board," the words "entire board" mean all the members of the board in existence and not all those provided for by the charter; and where seven Commissioners were elected and one resigned, the passage of an ordinance by a vote of five members was sufficient.

ACTION by Board of Commissioners against Wachovia Loan and Trust Company, heard by *Judge G. W. Ward* at the September Term, 1905, of the Superior Court of FORSYTH.

The defendant entered into a contract with the town of Salem to purchase from the said town $100,000 par value of its bonds at the price of $101,750. The bonds were a part of a total issue of $125,000, issued pursuant to an election held on 26 June, 1906, under the provisions of the charter of the town of Salem, being chapter 40 of the Acts of 1891. On the tender of the bonds by plaintiffs, defendant refused to accept same on the ground that said bonds were not of a valid issue of bonds and did not constitute a legal obligation of the said town of Salem. Plaintiffs brought suit to enforce the contract, and the case was heard on the complaint and answer. From the judgment rendered, defendant appealed.

*A. H. Eller* and *Peele & Maynard* for the plaintiffs.
*Manly & Hendren* for the defendant.

BROWN, J.    It is contended by the defendant that the bond
issue is void for two reasons: First, because the charter of
the town of Salem, authorizing the issue, was not passed by
the General Assembly and the ayes and noes entered on its
journals in accordance with Article II, section 14, of the
Constitution of this State.    Second, because the ordinance
directing the issue of the bonds and submitting the question
to a vote of the people was not passed by a three-fourths ma-
jority of the entire Board of Commissioners of the town, as
required by the charter.

In respect to the first objection made to the validity of the
bonds, it is admitted that the journals of the House of Repre-
sentatives are entirely regular and that the bill was passed
by the House in strict conformity to the organic law.    But on
its passage by the Senate it is contended that the negative
votes were not recorded.    The entries on the Senate Journal
in respect to this bill are as follows: "Senate Journal, Sen-
ate Chamber, January 23, 1891.    The bill passed its second
reading.    Ayes 39, noes .., as follows:"    Then follows a list
of those voting in the affirmative, without any reference to
those voting in the negative.    "The bill passed its third read-
ing.    Ayes 34, noes .., as follows:"    Then follows a list of
those voting in the affirmative, with no further reference to
those voting in the negative.

It is admitted that the case of *Debnam v. Chitty,* 131
N. C., 657, is an express authority sustaining defendant's
contention.    After much reflection, we are unwilling to fol-
low the decision of the Court in that case, in so far as it
holds that the entries upon the journal do not indicate that
there were no negative votes.    In the dissenting opinion of
*Mr. Justice Clark* it is said: "The expression, 'Passes by the

following vote: Ayes 94 (giving names), nays ..,' is as express and intelligent declaration that there were no negative votes as if the word 'none' had been used. Nays .., after the words 'passes by the following vote,' and giving those voting 'Aye,' can convey no other meaning. Is it not hypercritical to say that 'Nays ..' did not mean that there were no names in the negative?"

This provision in our Constitution serves an important purpose in compelling each member present to publicly assume his share of the responsibility in the passage of such legislation, but more particularly in furnishing conclusive evidence whether the bill has been passed by a constitutional majority. In passing upon a similar question the Supreme Court of Illinois says: "The Constitution prescribes this as the test by which to determine whether the requisite number of members vote in the affirmative." "It must appear on the face of the journal that the bill passed by a constitutional majority." *Spangler v. Jacoby,* 14 Ill., 297; Cooley's Constitutional Limitations (7 Ed.), 201.

The entries upon the Senate Journal give the names of a large majority of the total membership of that body as voting for the passage of this bill upon the second and third readings, so that there can be no question of its passage by a constitutional majority. But the entries indicate further that the bill passed by a unanimous vote and that there were no names to be recorded as voting in the negative. This identical question was considered by the Circuit Court of Appeals, Fourth Circuit, in the case of *Commissioners of Onslow v. Tollman,* 145 Fed. Rep., 765, a case originating in this State. In his opinion, *Judge McDowell,* referring to *Debnam v. Chitty,* says: "After the most careful consideration that we have been able to give the subject, we find ourselves unable to adopt the construction given the clause in question by the learned Supreme Court of North Carolina." So are we

unable to agree with our predecessors, and in that respect we overrule the decision referred to.

It is next contended that the ordinance under which the election was held to authorize said issue of bonds was not passed by the Board of Commissioners of the Town of Salem as prescribed by the charter. Section 70 of said chapter reads as follows: "That under the powers hereby conferred upon the Board of Commissioners, they may borrow money or create a public debt only after they have passed an ordinance by a three-fourths vote of the entire board at two separate regular meetings * * * ." There were originally elected seven Commissioners as prescribed by the charter; one had resigned, leaving six members of the board at the time of the second passage of the ordinance. At the meeting of the board, when the ordinance was alleged to have been passed the second time, only five members of the board were present, all voting for the passage of said ordinance.

It is argued by the defendant that the ordinance is not valid unless passed by three-fourths of the entire board; that the entire number is seven, and five is not three-fourths of seven; that in the construction of the language of the charter, there cannot be taken into consideration vacancies, however *bonà fide* they may be, and the language means three-fourths of the entire board provided for by the charter.

The authorities which the learned counsel for the defendant have called to our attention do not bear out his contention that the language of the charter should be construed as if it read three-fourths of the entire board elected. Such a provision is not uncommon in charters of municipal corporations, and the fact that the word "elected" was omitted after the word "board" is indicative to us that the Legislature intended that three-fourths of the entire membership of the board in existence at the passage of the ordinance should have power to pass such an ordinance. Wherever the special provision

143—8

in such charters contains the words "entire board elected," or similar terms, it is invariably held that all the members elected must be taken into account. Dillon on Mun. Corp., sec. 281. We are unable to find any judicial decision which places the same construction upon the words "entire board," when the word "elected" does not follow.

The term board, when used in municipal charters, seems to have two meanings—one abstract, having reference to the legislative creation, the corporate entity, which is continuous, and the other referring to its members, the individuals composing the board. The words "entire board," as used in the Salem charter, refer to the membership of the board, and were evidently inserted to guard against hasty municipal legislation by requiring three-fourths of all the members to concur. As the board, the corporate body, was composed of only six members when this ordinance was finally adopted, five of its members being present and voting for its passage, the requirements of the charter were fully complied with. So in a case where the power of amotion was conferred upon a municipal council to be exercised "by a vote of three-fourths of that body," this was held to give the power of removal to three-fourths of a legal quorum. Three-fourths of the members elected were not required. *Warnock v. Lafayette,* 4 La. Ann., 419. In South Carolina it is held that where, of eighteen managers (a board constituted to try a certain election) appointed by the Legislature, two refused to qualify, one was disqualified and one was dead at the time the board of managers convened, the remaining fourteen, being all the members *in esse,* properly constituted the board and might act by a majority of the fourteen. *State v. Deliesseline,* 10 S. C., 52. It is held in Missouri that an amendment is ratified by the "House" within the meaning of the Constitution of that State when it is ratified by two-thirds of a legal quorum; that when a legal quorum was present, that was in

law the "House." *State v. McBride,* 4 Mo., 308. See also
*Stanford v. Ellington,* 77 N. C., 255.

In construing the meaning of the words, "with the con-
currence of a majority of the justices of the peace," this
Court has held that, where a majority of the justices of the
county are assembled, the justices were in legal session, and
a majority of that majority could legally act. *Cotton Mills ·
v. Commissioners,* 108 N. C., 678.

We are of the opinion, therefore, in this case that the words
"entire board" mean all the members of the board in exist-
ence, and not all those originally elected. When the five
members assembled they constituted a legal board, and a
majority of that five had the right to pass any ordinary mat-
ter; but as to borrowing money or creating indebtedness, such
ordinances must receive the sanction of three-fourths of the
then membership of the board, whether present or not.

Affirmed.