COMMISSIONERS OF RICHMOND COUNTY v. FARMERS BANK.

(Filed 20 April, 1910.)

### 1. Legislature—Correction of Journals.

The same Legislature has power to correct its records or· journals so as to make them speak the truth, and, when corrected, the journals shall stand as if originally so made.

### 2. Same—Bond Issue—Special Session—Constitutional Law.

While the provisions of Art. II, sec. 14, of the Constitution are mandatory as to the manner in which counties, cities and towns may pledge their faith or credit to the payment of their debts, it does not prohibit a subsequent special session of the same Legislature from correcting its journals of the regular session so as to show in point of fact that a bill of this character was properly passed in accordance with these provisions.

### 3. Same.

When an issue of bonds of a county, appearing to be regular on the journals of the Legislature at its regular session, except for an inadvertence of the clerk of one branch of the Legislature to note that the bill passed its third and final reading by the recorded "aye" and "no" vote, and at a subsequent special session of the same Legislature the defect was called to the attention of that branch, the matter referred ·to the Committee on the Journal," which, after investigation, reported that a majority, giving the names of the voters, had voted "aye," with none voting to the contrary, the adoption of this report, and the correction of the journals accordingly, establishes the validity of the bonds in respect to the defect complained of.

APPEAL from *Lyon, J.,* at March Term, 1910, of RICHMOND.
Controversy without action, determined on case agreed.
From the facts agreed upon, it appeared:

· 1. That on the first Monday of December, 1909, the board of commissioners of the county of Richmond, and the defendant, The Farmers Bank, entered into a written contract by which the said board of commissioners agreed to sell to said bank, and said bank agreed to buy from said board of commissioners, $15,000 of 6 per cent road bonds, which the said board of commissioners proposed to issue for and on behalf of Beaver Dam Township in said Richmond County; said bonds were to be dated 1 January, 1910, and were to mature thirty years from date. Said bonds were to have been issued by virtue and in pursuance of chapter 512 of the Public Laws of North Carolina, session of 1907, entitled "An Act to Provide for the Improvement of the Public Roads of Richmond County," and of

an election duly and regularly called and held and carried in said Beaver Dam Township. Said election being held on 12 October, 1909.

2. That the defendant, The Farmers Bank, has declined and refused, and now declines and refuses, to carry out said contract by taking up said bonds and paying the purchase price as agreed in said written contract.

That the reason why the said The Farmers Bank has declined to carry out said contract is, that it contends that the said act, authorizing said bonds, to wit, chapter 512 of the Public Laws of 1907, did not pass the General Assembly of North Carolina as required by Article II, sec. 14, of the Constitution of North Carolina, in that the journal of the Senate for the session of 1907 did not originally show that the "ayes" and "noes" on the passage of said bill on said third reading were entered upon said journal for the session of 1907.

The facts with reference to the passage of said bill, as will appear from said journal, are as follows:

The said act was House Bill 1203, and was introduced into the House by Hon. W. L. Parsons, member of the House from Richmond County, and was entitled "A Bill to be Entitled An Act to Provide for the Improvement of the Public Roads of Richmond County." This bill passed the House of Representatives, as required by said Article II, sec. 14, of the Constitution, and was ratified in the House of Representatives on 2 March, 1907. See journals of the House of Representatives, 1907, pages 406, 514, 609 and 769.

The bill passed its first reading in the Senate on 28 February (see page 619); its second reading 1 March (page 665), as required by the Constitution, and was ratified in the Senate on 2 March (page 685).

The bill did regularly pass its third reading in the Senate of 1907, though the same was inadvertently not recorded on the journal, and at the special session of the General Assembly, held in Raleigh, in January, 1908, which was a special session called by the Governor, the Senate undertook to correct the journal for the year 1907, and passed a resolution declaring that there was an error in the journal of 1907, setting forth in full that said bill passed the Senate as required by the Constitution, and recommended a correction of the journal by the clerk, which was made, all of which will more fully appear by reference to page 21 of the Senate Journal of the Special Session of 1908, and the original Senate Journal of 1907 as corrected.

It is agreed that the printed journals of 1907 and 1908, to-

gether with the original journal as corrected, and certified copy of entries on bill in the Senate, shall be a part of this case.

The defendant, The Farmers Bank, contends that the journal of 1907 could not be corrected at the special session of 1908, and that for this reason the act authorizing said bonds did not pass the General Assembly as required by Article II, sec. 14, of the Constitution, and that, therefore, the plaintiff has no right to issue said bonds, and, if issued, they would be invalid and void, and for that reason the defendant declines to carry out said contract.

And on these facts the judgment of the court is prayed, etc.

The court below being of opinion that the Legislature had a right to correct its journals, and that the bonds in question would constitute a valid indebtedness, entered judgment for plaintiff, and defendant excepted and appealed.

*W. S. Thomas* and *A. S. Dockery* for plaintiff.
*Charles A. Webb* for defendant.

HOKE, J., after stating the case: Our State Constitution, Article II, sec. 14, provides as follows: "No law shall be passed to raise money on the credit of the State or to pledge the faith of the State, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the State, or to allow the counties, cities and towns to do so, unless the bill for the purpose shall have been read three several times in each House of the General Assembly, and passed three several readings, which readings shall have been on three different days, and agreed to by each House respectively, and unless the yeas and nays on the second and third readings of the bill shall have been entered on the journal."

Construing this section, the Court has repeatedly held that its provisions are mandatory, and that a statute of this character which has failed to comply with its requirements is not a valid law. *Cotton Mills v. Waxhaw,* 130 N. C., 293, and authorities cited.

In the present case it appears that all of the requirements in question have been complied with, except that by inadvertence the clerk of the Senate failed to note that the bill passed its third reading in that body and to enter the "yeas and nays" upon such reading on the Senate journal. At the special session of the same Legislature, in 1908, the defect in question having been called to the attention of the Senate, the matter was referred to the "Committee on the Journal," and it was ascertained and declared, on a report duly made, that the bill in question did pass its third reading, the report setting forth

the Senators present by name and showing that forty-seven Senators were present and all voted for the bill, and recommending that the journal be amended so as to show the facts. The report was adopted and the journal corrected, and, as it now stands, shows that the act passed its third reading; that forty-seven Senators were present and voted for same on such reading, giving the names of the Senators, and showing that all voted for the bill: "Those voting in the negative, none." Senate Journal, Extra Session, 1908, p. 21; *Commissioners v. Trust Co.,* 143 N. C., 110.

It is an accepted principle that the same Legislature has power to correct its records or journals so as to make them speak the truth, and, when corrected, the journal shall stand as if it was so originally made. This is true on general principles applicable to the amendment of records, certainly where no adversary rights of innocent third parties have intervened (26 A. and E., 503), and there are decisions more directly apposite to the same effect. *Railway v. Black,* 119 Ill., 207; *Turley v. County of Logan,* 17 Ill., 151; *Village of Gilbert v. Rabe,* 49 Ill. App., 418; *Leighton et al. v. Ossipe School District,* 66 New Hampshire, 548, and see Black on Constitutional Law, 266.

This provision of our Constitution was no doubt established with a view chiefly of obtaining more careful deliberation on these important measures, and by a lawful quorum of each of the legislative bodies, and, further, that responsibility for the enactment of such measures might be properly placed.

Every purpose of these requirements has been met by the deliberation and care with which the journal in the present case has been dealt with and corrected, and, both on reason and authority, we are of opinion that the act in question has been properly passed and that the same is a valid law.

There is no error, and the judgment below is

Affirmed.