STATE EX REL. WILSON, RESPONDENT, *v.* WILLIS, CITY CLERK, ET AL., APPELLANTS.

(No. 3,344.)

(Submitted June 2, 1913. Decided June 20, 1913.)

[133 Pac. 962.]

*Mandamus—Cities and Towns—Aldermen — Vacancies — Statutes—Official Oath—Filing—City Records—Duties of Clerk —Mandamus.*

Cities and Towns—Council—Vacancies—How Filled—Statutes.
1. *Held*, that the provision of section 3236, Revised Codes, requiring "a majority vote of the members" of the city council—*i. e.*, a majority of those constituting the actual membership of the body at the time—to fill a vacancy in an elective city office, and not section 3263, making "a majority of the whole number of the members elected" requisite for such purpose, is applicable in case a vacancy in its own body caused by resignation or death is to be filled.

Same—Council—Rights of Member Elected to Fill Vacancy.
    2.  Having been rightfully chosen by the city council to fill a vacancy in its own body, and after taking and subscribing the constitutional oath, an alderman had the right to have his vote on the question of filling another vacancy, caused by death, recorded, even though a certificate of election had not been issued to him, and irrespective of the mayor's refusal to recognize him or of the fact that an action to determine his official status was then pending.

Same—Alderman—Official Oath—Duty to File—Records—*Mandamus*.
    3.  The official oath of an alderman being required to be subscribed must be in writing, and is intended to become a record of the city; and since under section 3253, Revised Codes, the city clerk must keep all records, papers, *etc.*, of the city, he may be compelled by *mandamus* to file such oath, as well as record the vote of such alderman upon the question of filling a vacancy in the council, his vote constituting part of its proceedings at the meeting at which the vacancy was filled, of which record must be made.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

PROCEEDINGS in mandate by the state, on the relation of John D. Wilson, to compel W. A. Willis, as clerk of the city of Butte, and others, to perform certain duties. Relator had judgment, and respondents appeal. Affirmed.

· In behalf of Appellants, *Messrs. Alexander Mackel, Wm. F. Davis, John A. Smith,* and *N. A. Rotering,* submitted a brief; *Mr. Smith* argued the cause orally.

*Messrs. L. O. Evans, W. B. Rodgers,* and *John E. Corette,* for Respondent, submitted a brief; *Mr. Rodgers* and *Mr. Corette* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The city of Butte is composed of eight wards and its full complement of aldermen is sixteen. On April 16, 1913, John C. Smith, one of the aldermen for the third ward, resigned, and on April 23 a meeting of the city council was held for the purpose of filling the vacancy thus created. At this meeting one W. E. Rowan received the votes of eight aldermen and one James Walsh received the votes of six; whereupon the mayor declared that no election had resulted, for the reason that the votes of nine aldermen were necessary. On May 1

Rowan tendered his oath of office to the city clerk for filing and demanded of the city clerk that he file said oath and issue a certificate of election, but the city clerk refused to do either, and thereupon Rowan instituted proceedings in mandate which culminated on May 7 in the issuance by the district court of Silver Bow county of a peremptory writ requiring the city clerk to file the oath and issue the certificate, and Rowan received his certificate on that day.

In the meantime, and on April 30, John Hawke, an alderman of the fourth ward died, and on May 5 a regular meeting of the city council was held at which all the living aldermen of the city (including said Rowan) were present, together with the mayor. The matter of filling the vacancy caused by the death of Alderman Hawke was taken up, and the respondent Wilson and one John C. Driscoll were nominated, and it is alleged in the petition that Wilson received the votes of eight aldermen (including Rowan) and Driscoll received the votes of seven; whereupon the mayor, refusing to recognize the right of Rowan to vote, announced a tie vote of seven to seven and cast his own vote for Driscoll. It is further alleged in the petition that at the time of said election and before the vote was recorded, said Rowan demanded that his vote be recorded for Wilson, but this the city clerk refused to do. On May 14 Wilson tendered his oath of office to the city clerk for filing and demanded that the city clerk file the same and issue a certificate of election, which the city clerk refused to do. On May 15, Wilson commenced this proceeding to compel the city clerk by judicial mandate to record Rowan's vote for Wilson in the minutes of May 5, 1913, to file the oath of office of Wilson as an alderman of the fourth ward, and to issue to Wilson a certificate of election. An alternative writ was issued, and after a motion to quash had been filed by the city clerk and denied by the court, answer was made and a reply filed. Upon the issues thus framed the cause was heard, and upon the testimony taken the only issues of fact, *viz.*, whether Rowan had voted for Wilson at the meeting of May 5, and whether he had demanded that his vote be so recorded, were found for the relator Wilson.

Judgment resulted awarding a peremptory writ commanding the clerk to record Rowan's vote for plaintiff and to file Wilson's oath of office.   This appeal is from that judgment.

1. There is nothing before us upon which the correctness of the finding that Rowan voted for Wilson and demanded that his vote be so recorded can be assailed.   The question, then, is whether he was a member of the council at the time.   The appellant contends in the negative, asserting that under section [1]   3263, Revised Codes, the votes of nine members were necessary to elect Rowan, which confessedly he did not have.   Section 3263 forms part of a chapter of the Political Code especially devoted to the legislative powers of cities.   It was brought forward from the Political Code of 1895, where it appeared as section 4803, and its language is as follows: "The ayes and noes must be called and recorded on the final passage of any ordinance, by-law, or resolution, or making any contract, and the voting on the election or appointment of any officer must be *viva voce*, and a majority of the whole number of the members elected is requisite to appoint or elect an officer, and such vote must be recorded."   If the selection, by the council, of an alderman to fill a vacancy existing in its membership is within the purview of this section, then there cannot be the slightest doubt that the contention of appellant must be upheld; for nothing can be clearer than that the phrase "a majority of the whole number of the members elected" means a majority of the entire number necessary to constitute the full membership of the council; and this, in the case of Butte, would be nine. (*Wood* v. *Gordon*, 58 W. Va. 321, 52 S. E. 261; *Pollasky* v. *Schmid*, 128 Mich. 699, 92 Am. St. Rep. 560, 55 L. R. A. 614, 87 N. W. 1030; *Pimental* v. *City of San Francisco*, 21 Cal. 351.) But there are excellent reasons for the belief that section 3263 is not the provision to be applied to the case of an election by the council to fill vacancies in its own body caused by resignation or death.   In Article II, Chapter III, Title III, Part IV of the Political Code, which is devoted to the general subject of municipal officers and elections, we find section 3236: "When any vacancy occurs in any elective office, the council, by a

majority vote of the members, may fill the same for the unexpired term, and until the qualification of the successor. A vacancy in the office of alderman must be filled from the ward in which the vacancy exists, but if the council shall fail to fill such vacancy before the time for the next election the qualified electors of such city or ward may nominate and elect a successor to such office. The council, upon written charges, to be entered upon their journal, after notice to the party and after trial by the council, by vote of two-thirds of all the members elect, may remove any officer.'' This section was enacted in 1903, and, being the later legislative utterance upon the subject, must control if any substantial conflict exists between its provisions and those of section 3263. It is to be observed that by section 3236 ''a majority vote of the members'' is required to fill a vacancy, whereas two-thirds ''of all the members elect'' is required to remove from office. Both of these phrases are designed as bases upon which to determine the sufficiency of the vote, and it must be presumed that in the enactment of this statute the legislature had in mind a distinction as real as the language, under settled construction, expresses. No case called to our attention or revealed by our own researches, nor any analysis of the language independent of authority, suggests that the phrase ''a majority of the members'' could mean more than a majority of those constituting the actual membership of the body at the time; so that, if the full membership is sixteen but at a given time has been in fact reduced by the resignation of one, there are but fifteen members. (*State ex rel. Attorney General* v. *Orr*, 61 Ohio St. 384, 56 N. E. 14; *People ex rel. Funk* v. *Wright*, 30 Colo. 439, 71 Pac. 365; *Board of Commrs.* v. *Wachovia Land & Trust Co.*, 143 N. C. 110, 118 Am. St. Rep. 791, 55 S. E. 442.) Hence, as long as there is a quorum present, a majority of fifteen, or eight, will elect to fill a vacancy. (*Nalle* v. *City of Austin*, 41 Tex. Civ. App. 423, 93 S. W. 141; *People ex rel. Funk* v. *Wright, supra.*)

We are not called upon to determine whether a majority of a bare quorum will suffice, as suggested by the respondent; nor what might be the situation if ten of the aldermen were

killed at one time, as suggested by the appellant; happily neither situation is presented, and we confine ourselves to a determination of the case as made by the record.

2. It is next contended that even if Rowan was in fact elected as alderman prior to the meeting of May 5, still no certificate [2] of election had been issued to him, no recognition had been accorded him by the mayor, and no final decision had been rendered as to his status by the court in which the matter was pending, and therefore he was not entitled to vote. The only office a certificate of election could have performed was to officially inform the council of the election of Mr. Rowan; but they required no such information. Having elected Mr. Rowan by their own official action, they had official cognizance of it and the certificate was not necessary. Neither did the right of Rowan to participate in the meeting of May 5 depend upon recognition by the mayor or the decision of the district court. It depended upon whether he had been in fact chosen by the council and whether he had taken and subscribed the constitutional oath; both conditions having been met, there was no legal obstacle to the exercise by him, on May 5, of all rights and privileges of the office.

Since Rowan was properly present and participating in the meeting of May 5, and since he then voted, and demanded that his vote be recorded, for the respondent Wilson, it follows that Wilson had eight votes. By the death of Hawke, the actual membership of the council at the time was fifteen, and eight was sufficient. Wilson was therefore duly elected alderman and is entitled to be seated as such.

3. Then, if this is so, appellant argues that a reversal of [3] the case should follow because no right of Wilson's was invaded by the omissions complained of, and because the statute does not require the clerk to file the oath. We do not appreciate the argument. Doubtless, the present form of action was employed primarily to ascertain whether Wilson had been elected; but, having been elected, he was required not merely to take but to subscribe the constitutional oath. (Rev. Codes, sec. 3248.) This means that the oath must be in writing, and

it cannot be supposed that, having subscribed the written oath, the officer should then throw it away or carry it about upon his person. Clearly the oath, when taken and subscribed, was intended to become a record of the city. Again, the vote of Rowan for Wilson was part of the proceedings of the council at the meeting of May 5 and it constituted evidence of Wilson's right to the office which, together with the vote of the other members, it was necessary should be recorded fully and accurately. By section 3253, Revised Codes, it is made the duty of the clerk to file and keep all records, books and papers belonging to the city, and also to record the proceedings of the council. We see no reason why he should not be compelled by mandate to perform either duty when he has failed therein.

The judgment appealed from is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.