[S. F. No. 16252. In Bank.—June 22, 1939.]

W. H. NESBITT, City Clerk, etc., Petitioner, v. EMIL BOLZ, Councilman, etc., et al., Respondents.

Burke, Hickson, Burke & Marshall for Petitioner.

James C. Bone for Respondents.

EDMONDS, J.—By this proceeding in *mandamus* petitioner, who is the City Clerk of the City of Arcadia and also a taxpayer and qualified elector thereof, seeks to compel respondents, councilmen of that city, to appoint new members to fill vacancies existing on the city council. A demurrer filed by respondents admits the following facts which appear from the allegations of the petition.

Arcadia is a city of the sixth class organized under the Municipal Corporations Act. (Stats. 1883, p. 93.) As such it has a city council regularly composed of five members. (Mun. Corp. Act, *supra,* sec. 851.) In May, 1939, by an election held under the Municipal Elective Officers Recall Law (Stats. 1931, p. 563, as amended), two members of the council were recalled. A majority of the electors who voted at the recall election also voted that if the recall should prevail, the city council should fill the vacancy or vacancies created. (Mun. Elec. Off. Recall Law, *supra,* sec. 15.) Before the three remaining councilmen could act upon the matter of filling the vacancies, one of them resigned, and respondents, the two others have since refused to meet and appoint new councilmen upon the ground that they do not constitute a quorum of the city council and are without authority to transact any business.

■ It is petitioner's theory that under section 15 of the Municipal Elective Officers Recall Law, *supra,* respondents have the power and are under the duty to fill the vacancies on the city council created by the recall election. That section provides: "If the recall should prevail in any case, and a majority of those voting on the question of filling the vacancy or vacancies, as the case may be, favor a special election for that purpose, the same shall be called forthwith, . . . Otherwise the council shall forthwith fill the vacancy or vacancies by appointment." A further provision is: "In the event of a majority of the City Council being recalled at one and the same election, said members shall retain their offices until their successors are elected and qualify." (Sec. 16.)

From these provisions it seems clear that when a majority of the council members are recalled, those whom the voters have retired to private life must, nevertheless, continue in office for the purpose of electing their successors. But when fewer than a majority are recalled, as the facts of the present case show, then the only logical conclusion which can be reached is that the legislature intended the council, as composed of either three or four members, to elect persons to fill the vacancies in its membership.

■ This construction is in harmony with the Municipal Corporations Act, *supra,* which provides: "At any meeting of the city council a majority of said council shall constitute a quorum for the transaction of business . . . " (Sec. 859.) Although for certain functions, such as the enactment of ordinances, the concurrence of at least three members is required (sec. 861), there is no question but that a council of three members is directed and required to elect the successors of two recalled councilmen and that two of them constitute a quorum for that purpose.

This conclusion is not at variance with the so-called "City Slip" cases such as *San Francisco* v. *Hazen,* 5 Cal. 169; *McCracken* v. *San Francisco,* 16 Cal. 591, and *Pimental* v. *San Francisco,* 21 Cal. 351. These cases involved the interpretation of a charter provision which required the concurrence of "a majority of all the members elected" to the board of aldermen and a board of assistant aldermen for the passage of an ordinance. The ordinance in question had been passed by the board of aldermen, but the board of assistant aldermen, consisting regularly of eight members, voted four in the affirma-

tive and three in the negative, there being one vacancy at the time. It was held that inasmuch as the four assistant aldermen who had voted in the affirmative did not constitute "a majority of all the members *elected*", the ordinances had not been legally passed.

However, a distinction is recognized where, as in this case, the legislative provision does not explicitly require the concurrence of a majority of the members *elected*. In *Board of Commrs., etc.*, v. *Wachovia Loan & Trust Co.*, 143 N. C. 110 [55 S. E. 442], the court considered a charter provision which required "a three-fourths vote of the entire board" in order to pass an ordinance borrowing money. One member of the board had resigned, leaving six, and of these only five voted for the passage of such an ordinance. The court held that the charter provision meant three-fourths of the existing membership of the entire board, saying: "Wherever the special provision in such charter contains the word 'entire' board elected or similar terms, it is invariably held that all the members elected must be taken into account. (Dillon on Mun. Corp., sec. 281.) We are unable to find any judicial decision which places the same construction upon the words 'entire board' when the word 'elected' does not follow." (See, also, *People* v. *Wright*, 30 Colo. 439 [71 Pac. 365] ; *State* v. *Willis*, 47 Mont. 548 [133 Pac. 962].)

As it is the respondents' duty to meet for the purpose of electing two persons to fill the vacancies created in the city council by the recall election, let the peremptory writ of mandate issue.

It is so ordered.

Shenk, J., Seawell, J., Curtis, J., and Langdon, J., concurred.