THE CITY OF NEVADA, appellee, v. KENNETH SLEMMONS, appellant.

No. 48331.

(Reported in 59 N.W.2d 793)

July 17, 1953.

Hadley & Countryman, of Nevada, for appellant.

Frank Ambrose, of Nevada, for appellee.

LARSON, J.—This matter was submitted to the court on the pleadings, and the facts are not in dispute. By statute the City of Nevada, Iowa, is entitled to six councilmen. On May 12, 1952, one councilman resigned and his resignation was duly accepted May 21, 1952. At a council meeting on July 16, 1952, the name of the defendant, one Kenneth Slemmons, residing in the proper ward, was placed in nomination and by voice vote received four of the votes of the remaining five councilmen. When the voice action was questioned by the city solicitor defendant did not qualify but his name was again placed in nomination at a council meeting on July 23, 1952, along with other candidates. When a written ballot was taken of the remaining five councilmen defendant received three votes and another candidate two votes. Defendant immediately took the oath of office and performed the duties of councilman; attended the next seven meetings and was paid therefor. Thereafter the city solicitor in an opinion to the council held that defendant was not a duly elected and qualified councilman for the reason that he had not received a majority vote of all the members of the council. The district court decided statutory requirements were not followed and held defendant was "not a duly elected member of said council." Defendant appealed.

I. This action is authorized in rule 261 of the Rules of Civil Procedure, and the question to be decided is whether or not valid and proper procedure was taken by the council so that defendant is now a duly elected and qualified councilman of the City of Nevada, Iowa. This court has not heretofore been called upon to pass upon this question though a number of Attorney General's opinions during the past fifty years have been issued and followed by municipalities upon similar ques-

tions. See Attorney General's Opinions: 1909, page 104; 1914, page 28; 1920, page 780; 1935-1936, page 155.

██ ██ However, when the controversy finally reaches the court for determination, the opinions of the Attorney General rendered in due course, while entitled to careful consideration by the courts, and quite generally regarded as highly persuasive, are not binding on the judiciary, and it is our duty now to enter upon an independent inquiry as to the interpretation to be placed upon the statutes involved, relating to the filling of vacancies on city and town councils. 2 R. C. L. 920; 5 Am. Jur., Attorney General, section 14, page 243. We must now determine from the pertinent sections of the Code the legislative intent. It is difficult also to obtain persuasive help from outside authorities, for the language of other statutes may or may not bear a likeness to our own, especially where relative statutes must, as here, be considered. In such cases all statutes must be considered relating to the problem, for it is a cardinal principle of statutory construction that the intent is to be gleaned from the whole statute or statutes, relating to the matter, and not from any particular part, with due consideration for the object to be attained. State of Iowa for use of City of Estherville v. Hanson, 210 Iowa 773, 231 N.W. 428; Davelaar v. Marion County, 224 Iowa 669, 277 N.W. 744. The laws of Iowa pertaining to municipalities were substantially revised in 1951 by the Fifty-fourth General Assembly.

II. Subsection 8 of section 1, chapter 147, Acts of the Fifty-fourth General Assembly provides the council shall: "Elect by ballot persons to fill vacancies in offices not filled by election by the council, and the person receiving a majority of the votes of *the whole number of members* shall be declared elected to fill the vacancy." (Italics ours.)

We note that this is the identical language used in the previous law, section 363.36, subsection 8, Code of 1950, and therefore we conclude no change from past practices or procedure was necessary or desirable. Such powers and authority have been entrusted to city and town councils since 1904 when by chapter 41, Acts of the Thirtieth General Assembly, the statutory provision for special elections to fill such vacancies

was repealed and the power and authority conferred upon the council to fill vacancies pending the next regular municipal election.

The troublesome language of "a majority of the votes of the whole number of members" has received consideration in a well written Attorney General's opinion found in Attorney General's Opinions, 1909, page 104. It was then, as now, contended that this language meant the whole number of members *to which the corporation was entitled,* and this view seemed to be that taken by the district court in the matter before us. We do not agree with that conclusion.

In this connection it should be noted that the legislature included that particular phrase in subsection 2 of section 1, chapter 147, Acts of the Fifty-fourth General Assembly, the other pertinent statute here involved. This subsection provides the procedure of the council in conducting the business affairs of the municipal corporation. It provides: "Determine the time and place of holding their meetings, which at all times shall be open to the public * * *. A majority of the whole number of members *to which the corporation is entitled* shall be necessary to constitute a quorum." (Italics ours.)

 It is also noteworthy that this directional procedure came after the council had assembled and organized as provided in subsection 1 of section 1 of said chapter, and we believe was carefully inserted to insure that a definite number of councilmen representing the public interest would be present when business of the municipal corporation was attended. The italicized words do not appear in subsection 8 of section 1 of the Act, and significance must be given thereto in determining the intent of the legislature. In order to determine this intent it is fair to consider both the words used and deleted in companion subsections, in addition to the circumstances involved. It was provided in subsection 8, after one or more vacancies occur, that the majority of the whole number of members of the council could elect properly qualified persons to those vacancies. This was necessary in order, we feel, to obtain a membership of the council that may be required for a quorum. At each meeting of the council a quorum is required to conduct the business

affairs of the municipality. The meaning of the "whole number of members" in subsection 8, therefore, we hold was intended to relate to the whole *remaining* members of the council. It has already been decided by the court and it is perfectly clear that a majority of the remaining members must vote for the successful candidate and that a majority of those present at the meeting whether a quorum or not does not meet the express requirements of the law. State v. Dickie, 47 Iowa 629; 37 Am. Jur., Municipal Corporations, section 61, page 674.

██ Public policy also demands that a majority of the remaining councilmen should have the power to act in a manner that will prevent a total failure of the corporate function—which in a given case would result if they could not so fill vacancies and obtain sufficient members to comply with subsection 2 of the Act. Significant language, we believe, was used to provide a method by which the remaining members could elect successors to resigned or deceased members so that a quorum could be obtained to transact the city's business. If it were held otherwise, by resignation several members could completely and effectively inactivate a municipal government, or set the stage for a rule by negative action of the minority. Such a result was not the intent of the legislature in enacting chapter 147, Acts of the Fifty-fourth General Assembly. We have held many times that it is the duty of this court to interpret the statute in a way that will make it practicably workable without doing violence to other rules of construction. Dain Mfg. Co. v. Iowa State Tax Comm., 237 Iowa 531, 22 N.W.2d 786.

██ III. Section 10, Article IV, of the Iowa Constitution provides that the Governor shall have the power to fill vacancies only in case no mode is provided by the Constitution and laws for filling such vacancies. We believe, however, this constitutional provision is not applicable for the legislature has provided a mode by chapter 147, Acts of the Fifty-fourth General Assembly. It is inconceivable, we think, to place such a burden on the Governor in matters of this kind unless clearly required, and we cannot so construe here that legislative intent. Many occasions such as group resignations, an accident or other disaster could reduce the members of a council in a given city whereby

no quorum would be possible. Local members of the council, it must be conceded, are better able to know and select replacements in their community than the Governor of the state far removed from the concerned community.

IV. We have carefully examined the authorities cited and find only one or two helpful. In the case of State ex rel. Peterson v. Hoppe, 194 Minn. 186, 260 N.W. 215, the Minnesota Supreme Court held that the membership of a council for the purpose of selecting and electing a successor to a resigned councilman is the remaining members, and that a majority should be computed upon the basis of the membership as it exists after the vacancy or vacancies, not upon the total members elected in the first instance. This is in accord with our conclusion that such was the intention of the Iowa legislature in enacting chapter 147, Acts of the Fifty-fourth General Assembly, and in the law prior to these enactments.

Also directly in point we believe is State ex rel. Wilson v. Willes, 47 Mont. 548, 552, 133 P. 962, 964. There also the court was faced with two conflicting requirements. Under one section of the statute "a majority of the whole number of the members elected" was required, while another section provided that a "majority of the members" was needed to make action effective. That court also came to the conclusion that the expression "a majority of the members" meant that there must be a majority of those constituting the actual membership of the body at the time the vote was cast.

We are aware that the New Jersey court reached the opposite decision on the phrase "all the members", holding that this meant originally elected members. The decision, however, refers to a quorum vote on a proposed ordinance and does not differ from what our own conclusion would be on a question addressed to a legislative action by the council as distinguished from the election of a member to fill a vacancy.

Different language in the same Act did not there lend itself to a conclusion that the legislature must have had a reason for clearly calling for a majority of all members to which "the corporation is entitled" in one section and deleting it in another. Schermerhorn v. Jersey City, 53 N. J. Law 112, 20 A. 829.

█ We have found no other cases, and none were cited, that in reason suggest that the phrase "a majority of the members" could mean more than a majority of those constituting the actual membership of the body at a given time. There then, because of the resignation of one member of the six-man council, five members constituted the "whole number of members" at the time of the election of a successor to the resigned member. Three being a majority, their votes cast for the defendant must be held to constitute a valid election of the defendant to fill the vacancy. State ex rel. Attorney General v. Orr, 61 Ohio St. 384, 56 N.E. 14; People ex rel. Funk v. Wright, 30 Colo. 439, 71 P. 365; Board of Commissioners v. Wachovia Loan & Trust Co., 143 N. C. 110, 55 S.E. 442, 118 Am. St. Rep. 791; Nalle v. City of Austin, 41 Tex. Civ. App. 423, 93 S.W. 141.

V. Having determined that the defendant is a duly elected and qualified member of the Nevada City Council by virtue of his selection by written ballot and his action taken on July 23, 1952, it is not necessary to decide whether the voice vote taken on the 16th of July, 1952, was adequate under the provisions of chapter 147, Acts of the Fifty-fourth General Assembly. It may be sufficient to say here that in our changing times ballot voting has been extended to cover many methods besides a written ballot, and that the distinctive line between viva voce and election by ballot is becoming less distinct. The latter is constantly being extended to individual indiction by voice which is in turn recorded by a secretary or machine. It is also significant that in enacting chapter 147, Acts of the Fifty-fourth General Assembly, the words "viva voce" were left out of the new subsection 7 of section 1 and the language has been changed from that used in old subsection 7 of section 363.36, Code of 1950, undoubtedly giving to the council greater power over its own procedure while in session.

Furthermore, the defendant made no attempt to qualify until after the July 23d meeting, and until he did so his status was not an issue.—Reversed.

ALL JUSTICES concur.