TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 22-101 |
| | : | |
| of | : | May 26, 2022 |
| | : | |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| LAWRENCE M. DANIELS | : | |
| Deputy Attorney General | : | |

_____

MICHAEL SCHLESINGER, a resident of the City of Mission Viejo, requests leave to sue ED SACHS, WENDY BUCKNUM, and GREG RATHS in quo warranto to oust them from their public offices as members of the Mission Viejo City Council. The quo warranto application alleges that ouster is required on the ground that the elected terms of Councilmembers Sachs, Bucknum, and Raths have expired.

We conclude that whether the terms of Councilmembers Sachs, Bucknum, and Raths have expired presents substantial questions of law and fact that warrant a judicial resolution. Because we further conclude that it would be in the public interest to allow Schlesinger to initiate a lawsuit in quo warranto, leave to sue is GRANTED.

**BACKGROUND**

Mission Viejo is a general law city governed by a city council composed of five members elected for four-year, staggered terms.[1] Until recently, these elections have

_____

[1] Elec. Code, § 1301, subd. (b); Gov. Code, §§ 36501, subd. (a), 36503; Mission Viejo Mun. Code, §§ 2.02.010, 2.04.010, subd. (a), 2.04.140; see Gov. Code, § 34102 ("Cities organized under the general law shall be 'general law cities'"); *Dare v. Lakeport City Council* (1970) 12 Cal.App.3d 864, 866 ("Lakeport is what is commonly known as a general law city; it does not function under a municipal charter").

been "at-large," with each member representing the entire city and each elector able to vote for all open council seats.[2]

In March 2018, the Southwest Voter Registration Education Project sued the city under the California Voting Rights Act on the ground that the city's at-large system for council elections diluted the voting rights of Hispanic and Latino voters.[3] In July 2018, the parties settled the lawsuit by means of a stipulated superior court judgment. Under that judgment, starting in November 2020, the city was required to modify its at-large system by using cumulative voting. Cumulative voting allows voters to allocate as many votes as there are seats available, which can make it easier for minority groups to achieve representation.[4] If three seats are up for election, for example, a voter may use three votes for only one candidate, or two votes for one candidate and one vote for another, or one vote each for three candidates.[5]

The stipulated judgment also specified that, starting in November 2020, the elections would no longer be staggered, so that the voters simultaneously would elect all five council seats every four years.[6] As for the three council members whose four-year terms were to end in December 2018—proposed defendants Ed Sachs, Wendy Bucknum, and Greg Raths (Defendants)—the judgment provided that the election for their seats in

---

[2] Elec. Code, § 14026, subd. (a)(1).

[3] *Southwest Voter Registration Education Project v. City of Mission Viejo* (Super. Ct. Orange County, 2020, No. 30-2018-00981588-CU-CR-CJC); see Elec. Code, § 14025 et seq. (California Voting Rights Act of 2001). The Southwest Voter Registration Education Project describes itself as the "oldest Latino voter registration non-profit." (Southwest Voter Registration Education Project, SVREP History, www.tinyurl.com/yn45rjhd [as of May 17, 2022].)

[4] *CTS Corp. v. Dynamics Corp. of America* (1987) 481 U.S. 69, 86 & fn. 11; *U.S. v. Village of Port Chester* (S.D.N.Y. 2010) 704 F.Supp.2d 411, 447 (federal Voting Rights Act case).

[5] See Engstrom, *Is Cumulative Voting Too Complex? Evidence from Exit Polls* (1998) 27 Stetson L.Rev. 813, 815.

[6] The stipulated judgment further ordered that the "[c]ity shall, at an appropriate time, amend its codes to reflect this revision." This amendment was not enacted because, as discussed below, cumulative voting was never implemented.

2

November 2018 would be for two-year terms.[7]  Defendants were then reelected in November 2018 and took their oaths of office in December 2018.

After the November 2018 election, the city made attempts to implement cumulative voting.  But the Secretary of State's office indicated that it could not assist the city with cumulative voting because that office believed that this method was not authorized by statute.  Nonetheless, in July 2020, to give the city more time to try to implement cumulative voting, the court entered an amended stipulated judgment that postponed cumulative voting to the November 2022 election.  That judgment ordered as follows:

> 1) The implementation of cumulative voting in Defendant's City Council elections will begin with the November 2022 election rather than the November 2020 election;
>
> 2) All five seats on Defendant's City Council [are] to be up for election in November 2022 and every four years thereafter, rather than November 2020 and every four years thereafter;
>
> 3) The City shall implement limited voting (each voter gets one vote),[8] or district-based voting,[9] in each election in the event that cumulative voting cannot be implemented in that election; and
>
> 4) No further postponements of the implementation of the remedial changes to Defendant's City Council system will be granted for any reason.

---

[7] We list Defendants in the order used by Relator in his filings.  In December 2021, the council appointed Ms. Bucknum to act as Mayor, and Mr. Sachs to act as Mayor Pro Tem, in 2022.  (Mission Viejo City Council Minutes of Dec. 14, 2021, p. 5, at http://tinyurl.com/mu6j9bw.)  Their additional duties have no effect on our resolution of the quo warranto application.  (See 98 Ops.Cal.Atty.Gen. 94, 101 (2015).)

[8] In limited voting, "each voter must cast fewer votes than the number of representatives being elected."  (Black's Law Dict. (11th ed. 2019) "Voting," p. 1889, col. 2; see *Moore v. Beaufort County, N.C.* (4th Cir. 1991) 936 F.2d 159, 160.)

[9] In district-based voting, a city is separated into geographical areas—districts—each represented by a council member residing in that area, and electors within each district only vote for candidates living within their district.  (See Elec. Code, §§ 14026, subd. (b), 34871.)  Neither the original nor amended stipulated judgment specified the timeline for selecting district boundaries under this remedial option.

In all other respects, the Stipulated Judgment shall remain the same.[10]

The amended stipulated judgment did not specifically address whether Defendants' terms would expire in December 2020.

Defendants did not stand for reelection in November 2020, and they have continued to sit on the council to the present day. In November 2020, the city held at-large elections for two-year terms for the other two seats on the council.

In July 2021, after additional communications with the Secretary of State's office, the city council determined that cumulative voting was not practicable for the November 2022 election and decided instead to implement district-based voting pursuant to the alternative permitted in the amended stipulated judgment.

In March 2022, after multiple public hearings, the city council passed an ordinance changing the method of council elections from at-large to by-district, approving a district map, and specifying that in November 2022, three of the five districts will hold council-member elections (for Defendants' seats) for four-year terms.[11]

In January 2022, proposed relator Michael Schlesinger (Relator), a resident of Mission Viejo, applied to the Attorney General to bring an action in quo warranto against Defendants to remove them from office. In the application, he contends that Defendants were elected in November 2018 to two-year terms, that these terms expired in December 2020, and that Defendants are therefore unlawfully acting as council members. In their response, Defendants argue that section 2.04.140 of the Mission Viejo Municipal Code specifies that council members must serve four-year terms, and that because the plan for cumulative voting did not come to pass, the amended stipulated judgment allows them to serve a standard four-year term.

---

[10] Proposed Relator Michael Schlesinger's Statement of Facts, Exh. G (Orange County Super. Ct. Case No. 30-2018-00981588-CU-CR-CJC, Order Granting Joint Ex Parte Application for Order Amending Stipulated Judgment, filed Jul 16, 2020, p. 2).

[11] Minutes, City Council of Mission Viejo, Meeting of March 8, 2022, p. 3, at http://tinyurl.com/j84znnne; Mission Viejo Mun. Code, Ord. 22-343, at http://tinyurl.com/bdznxuvm; see Elec. Code, § 10010 (establishing procedure for changing from at-large to district-based elections).

4

**ANALYSIS**

Where a private party seeks to remove a public official from office through an action in quo warranto, the party must first obtain the Attorney General's consent.[12] The Attorney General has broad discretion in determining whether to give that consent.[13] To grant leave to sue, we must make three findings: (1) quo warranto is an available remedy; (2) the proposed relator raises a substantial issue of law or fact; and (3) allowing a quo warranto action to proceed will serve the public interest.[14] As we will explain, we believe that all three requirements are met here, so we grant the application for leave to sue in quo warranto.

**1.     Quo Warranto Is an Available Remedy**

For quo warranto to be an available remedy, the defendant must hold a public office, and the relator must be testing the defendant's title to that office.[15] As we have previously found, the position of city council member is a public office.[16] Further, courts have entertained actions in quo warranto based on claims that an official has improperly stayed in office after the official's term has ended.[17] Because Relator seeks to remove Defendants from office on this ground, quo warranto is properly invoked.

---

[12] Code Civ. Proc., § 803; Cal. Code Regs., tit. 11, §§ 1-11; *Internat. Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 693-698; 76 Ops.Cal.Atty.Gen. 157, 163 (1993).

[13] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 875; 103 Ops.Cal.Atty.Gen. 33, 35 (2020).

[14] *Rando v. Harris, supra,* 228 Cal.App.4th at p. 879; 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

[15] 102 Ops.Cal.Atty.Gen. 20, 22 (2019); 96 Ops.Cal.Atty.Gen. 36, 41 (2013).

[16] 103 Ops.Cal.Atty.Gen., *supra*, at p. 36; 99 Ops.Cal.Atty.Gen. 74, 76 (2016).

[17] See, e.g., *People ex rel. Bledsoe v. Campbell* (1902) 138 Cal. 11, 13-14 (challenging superior court judge who held over after the county board of supervisors declared that each candidate for new term received same number of votes); *People ex rel. Parsons v. Edwards* (1892) 93 Cal. 153, 154-158 (challenging fire commissioner who held over after appointing courts named in the statute were abolished); *People ex rel. Madden v. Stratton* (1865) 28 Cal. 382, 385-387 (challenging state librarian who held over after unauthorized appointment to new term); *People ex rel. Labachotte v. Morris* (1940) 41 Cal.App.2d 430, 435 (challenging member of state board of chiropractic examiners who held over under mistaken belief that his term of appointment had not yet expired).

Defendants argue that Relator's claim is not cognizable because quo warranto does not lie to negate or amend a superior court's judgments. But even if Defendants were correct that a claim seeking to negate or amend a superior court judgment is not cognizable, that would not be a bar to quo warranto here: we agree with Relator that his claim involves an interpretation of the stipulated judgments, as will become apparent, not a challenge to their validity or an attempt to alter them. We therefore find that quo warranto is an available remedy here.

## 2. There Are Substantial Issues Regarding Whether Defendants Hold Title to Office

The second inquiry is whether Relator's claim presents a substantial issue of law or fact warranting a judicial resolution. In addressing this prong, we do not decide the merits of the controversy.[18] That is, we do not determine whether the proposed relator's position is correct, but rather whether the issue should be judicially determined in the context of a quo warranto action.[19] In conducting this preliminary investigation, however, we may assess whether the underlying claim has a likelihood of prevailing in order to evaluate whether litigation would be a worthwhile expenditure of judicial and legal resources.[20]

Here, there are several issues worth resolving in court. Initially, there is the threshold question of whether Defendants' terms of office beginning December 2018 were for two years or four years. Relator contends that they were for two years, citing the following supporting documents:

- The original stipulated judgment filed on July 20, 2018, stating that the election would be for two years;

- City announcements, dated July 27, 2018, and August 13, 2018, posted on the city's website, stating that the prevailing candidates in the November 2018 city council election would serve for two years rather than four years;

- The public notice of election on July 30, 2018, stating that the three seats up for election would be for a "[f]ull term of two years"; and

---

[18] *Rando v. Harris, supra,* 228 Cal.App.4th at p. 879; 100 Ops.Cal.Atty.Gen. 29, 30 (2017).

[19] 95 Ops.Cal.Atty.Gen. 50, 54 (2012); 12 Ops.Cal.Atty.Gen. 340, 341 (1949).

[20] See 101 Ops.Cal.Atty.Gen. 16, 22 (2018); 100 Ops.Cal.Atty.Gen., *supra*, at pp. 37-38.

- A city council resolution of December 11, 2018, stating that Defendants had each been elected on November 6, 2018, "for the term of two years."[21]

Defendants respond that the terms of office were for four years, citing the following supporting documents:

- A council resolution of June 26, 2018, stating that the three seats were up for election for four-year terms; and

- Minutes of a December 11, 2018 meeting, which reflect that Defendants were sworn into office but do not indicate that their terms were for two years.[22]

The June 2018 council resolution was passed, however, before the July 2018 original stipulated judgment set the terms at two years. As for the minutes of December 11, 2018, their silence on the length of these terms is not probative of the length of these terms; to the contrary, the council's resolution on the same date states that Defendants were each elected "for the term of two years." Relator therefore makes a strong case that Defendants were elected to two-year terms.

Defendants further argue that their terms were for four years under a legal theory that the amended stipulated judgment maintained the "status quo" of four-year terms for Defendants under the Mission Viejo Municipal Code.[23] We acknowledge some support for this interpretation in a provision of that judgment. In paragraph two of the amended stipulated judgment, the court contemplates the remedy of cumulative voting, stating that "[a]ll five seats on Defendant's City Council [are] to be up for election in November 2022 and every four years thereafter, *rather than* November 2020 and every four years thereafter."[24] This statement could imply that there would *not* be five city council seats up for election in November 2020.[25] And the only seats that conceivably could be

---

[21] Relator's Statement of Facts, Exhs. A-E.

[22] Defendants' Supp. Briefing on Gov. Code, §§ 1302 & 36503, Attachments 2, 3, 4.

[23] Mission Viejo Mun. Code, § 2.04.140; see Elec. Code, § 1301, subd. (b).

[24] Relator's Statement of Facts, Exh. G (Orange County Super. Ct. Case No. 30-2018-00981588-CU-CR-CJC, Order Granting Joint Ex Parte Application for Order Amending Stipulated Judgment, filed Jul. 16, 2020, p. 2, lines 11-12, emphasis added).

[25] Indeed, prior to the amended stipulated judgment in July 2020, the city apparently intended that Defendants' terms would be treated as four-year terms. According to the minutes of a city council meeting in June 2020, the Mission Viejo City Attorney stated that "the 2020 election will be in the normal format with two seats for a two-year term *and the remaining Council Members [Defendants] will have a four-year term until 2022*." (Minutes, City Council of Mission Viejo, Meeting of Jun. 23, 2020, p. 2, emphasis added, at http://tinyurl.com/2p8wwtfv.)

excluded from the November 2020 election would be Defendants' three seats, because the other two seats indisputably expired in 2020 and had to be included in that election. Under this interpretation, the amended judgment necessarily extended Defendants' terms from 2020 to 2022.

On the other hand, considering the judgment's use of the conjunctive phrase "and every four years thereafter," the judgment's change in election dates could simply mean that, beginning in November 2022, the city should return to the regular practice of electing city council members to four-year terms. Under this interpretation, the amended stipulated judgment did not alter the two-year terms established by the original judgment.

In any event, nothing in the amended stipulated judgment expressly extended Defendants' terms. Relator maintains that in the absence of an express extension in the amended stipulated judgment, the original stipulated judgment controlled, overriding the municipal code governing terms of office and limiting Defendants' terms to two years. In the same vein, although Defendants assert that their shortened terms were contingent on the implementation of cumulative voting, Relator points out that neither of the stipulated judgments expressly includes such a condition.

As a separate matter, Defendants argue that even if their elected terms of office were for two years, they nevertheless were authorized by statute to remain in office after their terms ended in December 2020. Specifically, Defendants argue that Government Code sections 1302 and 36503 support their position that they are lawfully holding office and that an action in quo warranto is therefore unwarranted. These statutes require city council members to continue to hold office until their successors are installed. Section 1302 provides that "[e]very officer whose term has expired shall continue to discharge the duties of his office *until his successor has qualified*."[26] As to municipal officers specifically, section 36503 provides that "[c]ity officers holding elective city office shall hold office for their prescribed terms from the date of the installation of officers following adoption by the council of the official canvass of their election *and until their successors are elected and qualified*."[27] The policy behind these directives is to avoid

[26] Gov. Code, § 1302, emphasis added.

[27] Gov. Code, § 36503, emphasis added; see also Mission Viejo Mun. Code, § 2.04.140 ("City council members shall hold office for four years from the Monday succeeding the county clerk's certification of the election *and until their successors are elected and qualified*," emphasis added); Relator's Statement of Facts, Exh. A (Orange County Super. Ct. Case No. 30-2018-00981588-CU-CR-CJC, Stipulation for Entry of Judgment and Judgment, filed Jul. 26, 2020, p. 3 ["The members of the Mission Viejo City Council in office on the date judgment is entered by the Orange County Superior Court shall continue in office until the expiration of their respective terms *and until their successors are elected and qualified*," emphasis added]).

8

vacancies between successive office holders.[28]  Defendants argue that even if their terms were for two years, these statutes would authorize them to hold office past those terms.[29]

Relator interprets these statutes more narrowly as addressing short delays stemming from officeholder transitions.[30]  He asserts that neither statute purports to extend officials' fixed terms of office or is meant to allow officials to indefinitely serve past their terms by avoiding having elections.[31]  In his view, despite these holdover statutes, the expiration of Defendants' terms created vacancies that would authorize a court to order that Defendants be removed from office.[32]

Ultimately, it is not our province to settle the parties' dispute, and we do not predict how a court would resolve the issues raised in the application.  It is enough to

---

[28] See *Hartford Acc. & Indem. Co. v. City of Tulare* (1947) 30 Cal.2d 832, 836; *In re S.D.* (2002) 102 Cal.App.4th 560, 566, fn. 9.

[29] See 66 Ops.Cal.Atty.Gen. 477, 480 (1983) (under Government Code section 1302, an appointed member of the Commission on Emergency Medical Services "whose term has expired may continue to discharge the duties of office until a successor has qualified . . . either by election, appointment, or otherwise").

[30] As Relator puts it, "the holdover provisions are intended to account for and address nuances in calendaring, such as the gaps (or unforeseen delays) between the time that an election is held; an election official reports the election results; the next regularly scheduled meeting of a municipality to certify those results; and the qualification and swearing in of a successor."  (Relator's Supp. Briefing on Gov. Code, §§ 1302 & 36503, p. 1.)

[31] See *People ex rel. Parsons v. Edwards*, *supra*, 93 Cal. at pp. 157-158 ("the language of the statute o[r] constitution may show an intention to fix and limit precisely the tenure of an officer, so that at a particular time his authority will cease, although an absolute vacancy and absence of authority result therefrom").

[32] See 52 Cal.Jur.3d (Feb. 2022 update) Public Officers and Employees, § 94, citing *Adams v. Doyle* (1903) 139 Cal. 678, 680-682 (where no successor takes office after the prior incumbent's four-year term expires, "[t]he vacancy is in the term of four years just beginning," and "[t]he prior incumbent does not claim title to this term, and he has none"); see also *People ex rel. Bledsoe v. Campbell, supra,* 138 Cal. at p. 15 (former Political Code section 879, the precursor to Government Code section 1302, "does not in terms purport to give authority to the incumbent of an office to hold the same after his term has expired, but merely imposes certain duties upon him whenever he is authorized to hold over after the expiration of his term").

9

conclude, as we do, that Relator has presented substantial questions of law and fact that warrant judicial resolution.

### 3.    Granting the Application Would Serve the Public Interest

Lastly, we conclude that resolving whether Defendants should be removed from office is a matter of public interest, and that permitting a quo warranto action to proceed on this basis would serve this interest. Ordinarily, absent countervailing considerations, we view the existence of a substantial question of law or fact as presenting an adequate public purpose to justify granting leave to sue in quo warranto.[33] Additionally, Relator's claim implicates the fundamental voting rights of the electors of the City of Mission Viejo.[34]

Defendants argue that the public interest would not be served here by granting the application because there will be an election for their seats anyway in November 2022, and it would be disruptive to the administration of government to dispossess them of their offices for only a few months. While we cannot say with certainty whether a court will resolve this matter before November 2022, a potentially short period of time remaining in an officeholder's term of office is not, by itself, an adequate reason to deny a quo warranto application that presents substantial questions of law or fact meriting judicial resolution.[35]

---

[33] 98 Ops.Cal.Atty.Gen., *supra,* at p. 101; 95 Ops.Cal.Atty.Gen. 67, 75 (2012).

[34] See Cal. Const., art. I, § 22, art. 2; *Hedlund v. Davis* (1956) 47 Cal.2d 75, 81 ("The right of suffrage is protected by the Constitution of California [citations] and every reasonable presumption and interpretation is to be indulged in favor of the right of the people to exercise the elective process"); *U.S. v. Upper San Gabriel Valley Mun. Water Dist.* (No. CV-00-7903 AHM, C.D. Cal., Sep. 8, 2000) 2000 WL 33254228, *3 (denying preliminary injunction to enjoin election because otherwise, "the voters would have been deprived of their right to replace the allegedly unlawful incumbents"); 27 Ops.Cal.Atty.Gen. 249, 253 (1956) (granting application for quo warranto based on allegedly improper ballots cast in election, stating that "[t]he right to vote is one of the most important functions of good citizenship and no person should be denied that right if the law is reasonably susceptible of any other meaning").

[35] 97 Ops.Cal.Atty.Gen. 12, 19 (2014) ("While the fact that an office holder has a relatively short amount of time in his or her term might 'reinforce' our decision to deny a quo warranto application that we find lacking in legal merit, we decline to invoke the timing element as the sole basis for denying what we believe to be a meritorious application with a substantial likelihood of prevailing," internal citations omitted).

10

Defendants have also suggested that a quo warranto action may be unwarranted because of a related action recently filed in superior court.[36] In that action, Relator seeks to compel the city to have an election in November 2022 for the other two council members' seats.[37] Although that mandate petition asks the court to order all five council seats for election in November 2022, Defendants' three seats are already scheduled for election at that time. Thus, if the court granted relief in that action, it would affect the offices of the other councilmembers but not those of Defendants. By contrast, this quo warranto application seeks to remove the three Defendants from office immediately—*before* their seats are up for election in November 2022. The quo warranto application therefore seeks different relief from the mandate petition filed in superior court.

Defendants assert that it would be destructive to the City of Mission Viejo if Defendants were removed from office because it would leave the five-member council with two members, preventing a quorum to take action on behalf of the city. The council is responsible for filling any vacancy by appointment or by calling a special election to fill a vacancy.[38] Generally, a majority of a city council—a quorum—must be present to conduct any business.[39] However, two remaining members of a five-member city council may be authorized to fill a vacancy despite the lack of a quorum.[40] While we

---

[36] Orange County Super. Ct. Case No. 30-2022-01253878-CU-WM-CJC, Verified Complaint for Declaratory Relief and Petition for Writ of Mandate.

[37] These other two council members were elected to two-year terms in November 2020 and are not named in this quo warranto application. But the next election for those seats is currently scheduled for November 2024.

[38] Gov. Code, § 36512, subd. (b).

[39] Gov. Code, § 36810 ("A majority of the council constitutes a quorum for transaction of business"); see Gov. Code, § 36936 ("Resolutions, orders for the payment of money, and all ordinances require a recorded majority vote of the total membership of the city council").

[40] *Nesbitt v. Bolz* (1939) 13 Cal.2d 677, 678-679 (where two council members of a five-member city council were recalled, and one resigned, the remaining two may appoint the replacements); 49 Ops.Cal.Atty.Gen. 30, 30 (1967) (where three members of a five-member board of directors of a special district vacated office, the remaining two board members may appoint the replacements); *id.* at pp. 32-33 (discussing an Attorney General letter advising the Governor "that the two remaining members of a five-man city council could act for the purpose of filling the vacancies on the council"); but see *Price v. Tennant Community Services Dist.* (1987) 194 Cal.App.3d 491, 497-498 (distinguishing *Nesbitt* and the above Attorney General opinion on the ground that they each relied on specific election provisions and finding that for a five-member community district board, the sole remaining director could not make appointments).

11

acknowledge Defendants' practical concern, we view it as a factor for the court to consider in fashioning any remedy, not as a bar to granting leave to sue.

Finally, we recognize that Relator did not submit this quo warranto application until approximately 13 months after Defendants' terms of office allegedly expired in December 2020, and that he has not addressed this lapse of time. It would have been preferable for Relator to pursue this matter earlier. That said, the strong public interest in a court settling Defendants' title to office persuades us that the delay should not prevent the proposed lawsuit from being filed.

## CONCLUSION

Relator has presented substantial questions of law and fact that warrant judicial resolution, and it would be in the public interest to allow Relator to initiate a lawsuit involving these questions. Accordingly, the application for leave to sue in quo warranto is GRANTED.